**Eddie DANIELS, Vera Daniels and Ahmad Daniels, their minor son, Plaintiffs,**

**v.**

**CITY OF CHICAGO, et al., Defendants.**

**No. 95 C 6389.**

United States District Court, N.D. Illinois, Eastern Division.

March 22, 1996.

Alfred M. Swanson, Jr.; River Forest, Cathy Ann Pilkington; Mitchell Ware, Chicago, IL, for Plaintiff.

Irene Schild Caminer; Sharon Baldwin; Chicago, IL, Margaret Ann Carey; Riverside, IL, Patricia Jo Kendall; Susan S. Sher, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

The City wants to knock out part of the complaint against it.

The case arises from the execution of a warrant at 6540 S. Artesian, a home where plaintiffs lived. The warrant was for 6538 S. Artesian. The search discovered no evidence of crime, the internal layout of the home did not match the description given by the police informant, and the search expanded beyond its stated object—guns—to include drugs and beyond its intended location—bedroom and pantry—to include the entire house. The home entered by the police was clearly marked as 6540, the numbers posted in large print on the front door. The police entered another door.

The claim against the officers is for their failure to cease the search when they should have known they were in the wrong place and for their improper expansion of the places and objects of the search. The City is alleged to be liable because it permits its officers to use unauthorized tactics to search homes to confiscate guns and drugs. This permission is inferred from the City's failure to impose discipline commensurate with the gravity of these officers' misconduct. The plaintiffs allege at least one other case in which similar conduct was not the subject of officer discipline and allege generally that this is City custom and practice.

■ I find this case difficult. In this Circuit and others, policy was expressed in a movement to require more particularity in pleading *Monell* claims. *Strauss v. Chicago*, 760 F.2d 765 (7th Cir.1985). The movement was brought to a halt by *Leatherman v.*

*Tarrant County Narcotics Intelligence & Coordination Unit, et al.,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). *Leatherman* addressed an important, but abstract, question of whether any federal court had the authority to require a "heightened pleading standard" in § 1983 cases against municipalities. The Court said no. First, it rejected the rationale for the rule. If there were a municipal immunity from suit, policy might well demand very specific pleading in order to require a City to answer and defend a lawsuit. "... a ... relaxed pleading requirement would subject municipalities to expensive and time consuming discovery ... eviscerating ... immunity from suit." *Leatherman*, 507 U.S. at 166, 113 S.Ct. at 1162. But there is no qualified immunity from suit for a municipality, there is only freedom from liability. The rationale for heightened pleading "wrongly equates freedom from liability with immunity from suit." *Leatherman*, 507 U.S. at 166, 113 S.Ct. at 1162. Put another way, *Monell* exempts a City from paying damages in respondent superior for the acts of its employees, but it does not exempt them from the costs of defense.

■ Second, the Supreme Court found no warrant in the Federal Rules for special pleading requirements in municipal liability cases. Rule 9(b) does not apply generally to these cases and, absent its application, the requirements rest on thin air. The only way to impose the requirement is to amend the Federal Rules.

The one thing the Court did not address was whether the pleading in *Leatherman* was adequate. The stated basis for liability was the municipality's failure to train. The Fifth Circuit did not expressly address the issue on remand, *Leatherman*, 993 F.2d 1177 (5th Cir.1993) or in its final review where it affirmed a finding on summary judgment that the challenged acts of police officers were lawful, *Leatherman*, 28 F.3d 1388 (5th Cir.1994). One difficulty with the failure to train allegation is that it is difficult to imagine many cases in which it could not be made. If a police action is assumed to be wrongful, it is usually possible to infer that training is less than adequate. More training is always

possible, therefore, it is always possible to allege that more should be given. The same thing is true of officer discipline. Penalties can almost always be heavier or more frequently imposed.

*Jackson v. Marion County,* 66 F.3d 151 (7th Cir.1995) does not resolve the matter. The pleading there did not lay blame at the feet of a county policy, it claimed that bad acts were committed by the county itself. In dicta the Court said that one cannot infer from a single act of a municipal employee that a municipal policy played some part in the acts. It also said that *Leatherman* makes clear that the federal courts are not to interpolate a requirement of fact pleading into the federal rules.

■■■ The complaint here alleges policy arising from two incidents. Inductive logic is very clear cut except that it does not permit a rule to be inferred from a single instantiation. Two might be enough but most scientific examples involve the induction of principles from thousands, sometimes millions, of observations. How much the administration of law ought to be governed by scientific rigor is debatable, but the one part of legal process least likely to be subject to scientific rigor is the drafting of complaints. Indeed, they are not subject to very much legal rigor. The usual question is whether the complaint presents a case in which it is *impossible* for the plaintiff to win if everything in it is true. Legal rigor begins with summary judgment (unless, of course, a plaintiff chooses to plead the full details of the case in the complaint) and *Leatherman* commands us to be careful not to apply it before then. Within this mode of operation, I decline to dismiss this complaint. Two incidents of aggravated police misconduct, one very aggravated, without the imposition of discipline could support an inference that there is a policy against discipline, and it is inferable that lack of discipline (and its deterrent effect) is a municipal policy that caused, in some sense, the bad acts alleged in the complaint.

■■■ The City attacks the intentional infliction of emotional distress because the conduct alleged does not meet the high threshold of this tort as it exists in Illinois. Here there was a single incident and the conduct was not outrageous. There is no dispute that the tort requires extreme and outrageous conduct intended to cause and, in fact, causing severe emotional distress. Intention to cause need not be proved if the defendant knew there was high probability that the conduct would cause severe emotional distress. The paradigm case is repeated harassment over time. But, the paradigm is not the only way to practice the tort. In *Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498 (1994) the tort occurred when police came to the scene of an alleged attack. He was told by the victim that an intruder was in her home, and had attacked her and her children. The supervising officer was dismissive, rude and demeaning and refused to break down the door for fear of liability for property damage. But, I read the Supreme Court of Illinois to find outrageousness primarily in the refusal to intervene to save the complainants' children. *Calumet City,* 204 Ill.Dec. at 283, 641 N.E.2d at 507.

In this case, it is alleged that police broke into a house, forced two unclothed adults to lie handcuffed on the floor at gunpoint in the presence of their three-year-old son for a period of half an hour, and during much of this time the officers should have known they were in the wrong place. Under these circumstances, the police knew[1] their conduct had a high probability of causing severe emotional distress. This conduct is not as outrageous as that found in *Calumet City* where the complainants' child was raped essentially as a result of the officer's inexplicable failure to intervene (and this was precisely the outcome dreaded by the complainant). It is a close question. I cannot say that the claim has no hope of succeeding, and I refuse to dismiss.

■■■ Finally, the City states there is no legally separate claim of wilful and wanton conduct in a case in which the City is already

---

**1.** The complaint alleges that the police officers "knew ʳ⁻ should have known" of the effect of their conduct. This is inadequate, but given the facts alleged by plaintiffs, they would be justified in striking "should have known." I give leave to do so.

charged with wilful and wanton conduct regarding false imprisonment and emotional distress. The City is right. Count IV is dismissed against the City.

Motion to dismiss Count IV against the City is granted. The other relief sought is denied.