Sharon A. **SEKERAK**, Plaintiff,

v.

**CITY AND COUNTY OF DENVER,**
a municipal corporation,
Defendant.

**No. Civ.A. 97–WY–342–CB.**

United States District Court,
D. Colorado.

Jan. 27, 1998.

Steven L. Murray, Rita Byrnes Kittle, MurrayKittle, P.C., Denver, CO, for plaintiffs.

Daniel E. Muse, Xavier S.L. Duran, Luis Corchado, Denver, CO, for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter is before the Court on Defendant City and County of Denver's (the City) Motion for Summary Judgment. The Court FINDS and ORDERS as follows:

### Background

Plaintiff Sharon Sekerak has been an employee of the Denver Police Department since 1968. In 1988, her job title became Administrative Assistant/Building Manager. In that capacity, she both managed the building and performed clerical duties. Sekarak's immediate supervisor during this period was Miriam Reed, whose supervisor was, in turn, Tim Leary. As late as January, 1995, both Reed and Leary expressed their satisfaction with Sekerak's job performance and told her she was doing "a great job."

In the spring of 1995, Reed and Sekerak actively supported Mary DeGroot's candidacy for Mayor of Denver. During the mayoral race between DeGroot and Mayor Wellington Webb, Reed and Sekerak attended a campaign meeting, as did several other Department employees, including Sergeant Judy Will, a well-known and vocal Webb supporter. Sekerak observed Will taking notes at the meeting; when Sekerak inquired as to Will's presence, Will told Sekerak she was writing down the names of all Department employees in attendance. Will said the list was for Mayor Webb and Chief of Police David Michaud. In a telephone conversation between Reed and Will after the meeting, Will stated, "[I]f you openly support a candidate and they lose, well ... you've got to be prepared to take your medicine."

As the campaign continued, Sekerak began to hear rumors that if Webb were reelected, Sekerak and Reed would lose their positions. Leary assured Sekerak that she was doing good work and that the rumors were unfounded.

Reed, for reasons not clear from the record before the Court, filed a complaint with the EEOC in June, 1995. After filing the complaint, Reed was demoted. In the resulting controversy, Sekerak vocally supported Reed and objected to the Department's treatment of her.

Daniel O'Hayre assumed Reed's duties as the new Division Chief. O'Hayre informed Sekerak that her job duties had been changed and that she was no longer building manager. O'Hayre divided Sekerak's building manager duties between three male employees, and assigned Sekerak mostly clerical tasks.[1]

Sekerak was subject to other perceived slights as well. For example, she was given a job classification of Facility Maintenance Liason, despite being promised the higher paying job classification of Facility Maintenance Coordinator; her annual performance rating was lowered from "outstanding" to "exceeds expectations" after she filed an intent to sue notice; and a metal file cabinet drawer full of Sekerak's work orders was

---

1. One of the male employees, Lyle Hesalroad, was removed from a job he enjoyed and assigned to this position apparently against his will. Hesalroad was a DeGroot supporter.

removed by O'Hayre and given to another employee.

Based on this disparate treatment, Sekerak filed this suit against the City. She brings the following claims: (1) unlawful employment practices and sexual discrimination in violation of 42 U.S.C. § 2000e against the City; (2) unlawful retaliation in violation of 42 U.S.C. § 2000e against the City; (3) and unlawful deprivation of civil rights in violation of 42 U.S.C. § 1983 against the City.[2] The City seeks summary judgment on all these claims.

### Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit; an issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing summary judgment. See *Walker v. Toolpushers Supply Co.*, 955 F.Supp. 1377 (D.Wyo.1997). In determining whether to grant summary judgment, the Court must examine the factual record in the light most favorable to the nonmoving party. See *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir.1995).

### Analysis

**1. Title VII Claims**

Sekerak brings sex discrimination and retaliation claims under Title VII of the Civil Rights Act. The familiar burden-shifting framework delineated by the Supreme Court in McDonnell *Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies to both these claims. That framework first requires the plaintiff to establish a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. Once the defendant proffers such an explanation, it falls to the plaintiff to demonstrate that the proffered explanation is unworthy of belief and merely a pretext for unlawful discrimination. See *id.* 411 U.S. at 802, 804–05.

**(a) Sex Discrimination Claim**

■ To establish a prima facie case of sex or gender discrimination, Sekerak must show that: (1) she belongs to a protected class; (2) she was adversely affected by the City's actions; (3) she was qualified for her employment position; and (4) she was treated less favorably than her male counterparts. See *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1379 (10th Cir.1994).

■ The City does not dispute with any vigor that Sekerak belongs to a protected class or was qualified for her employment position, but instead contends Sekerak was neither subjected to adverse treatment nor treated less favorably than her male counterparts. In support of these contentions, the City directs the Court's attention to the fact that Sekerak suffered no loss in pay, was not forced to change offices, and was occasionally called on by the Department to aid in building issues. The City argues these facts demonstrate conclusively a lack of material change in the terms and conditions of Sekerak's employment.

■ The City proposes too limited a definition of "adversely affected." A person reassigned is adversely affected not only if she receives less pay, but also if she has less responsibility or is required to utilize a lesser degree of skill than in her previous assignment. See *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 799 (10th Cir.1993), *overruled in part on other grounds, Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir.1995). Thus, the "adversely affected" inquiry is not limited to a cursory review of merely relevant factors such as pay and office location, but rather entails a searching examination of the duties and skills of the new position.

Before her reassignment, Sekerak performed substantive duties related to her working, if not official, title of "Administra-

**2.** Sekerak also brought a claim against the City under the Equal Pay Act, 29 U.S.C. § 206(d). In accordance with her recently filed Motion to Voluntarily Dismiss Fifth Claim for Relief: Equal Pay Act Claim, the Court hereby dismisses that claim.

tive Assistant/Building Manager." Her building manager duties included coordinating all building maintenance for the Department, ensuring all repair, plumbing, electrical, and telephone problems were efficiently and effectively resolved, and consulting with contractors and janitors. After her reassignment, these duties were essentially eliminated, and Sekerak relegated to performing routine clerical tasks and handling problems related to telephones and pagers. Hence, even if her salary remained constant, it is painfully obvious that Sekerak's new duties involved less responsibility and required less skill.

■ The Court also rejects the City's separate argument that Sekerak cannot satisfy the fourth factor in the prima facie case analysis. To that end, the City notes no similarly situated males were treated better than Sekerak. This ill-fated argument first overlooks that at the time of Sekerak's reassignment there were no similarly situated males and second simply ignores that Sekerak's building manager duties were divided among *three* males, none of whom appear to be as well qualified for the position as Sekerak. It is not required, as the City argues, that Sekerak's allegations of discrimination fall neatly within predetermined descriptive categories. *See Tomsic v. State Farm Mut. Auto. Ins. Co.,* 85 F.3d 1472, 1476 (10th Cir.1996). It is instead sufficient if, as here, the conduct alleged may reasonably be said to give rise to an inference of unlawful discrimination. *See Adams v. West Publishing Co.,* 812 F.Supp. 925, 932 (D.Minn.1993).

■ There is additional, albeit limited, evidence that Sekerak's reassignment was based on unlawful gender discrimination. In her affidavit, Sekerak attests as follows: "O'Hayre made the statement or insinuated to me that I was keeping the telephone

duties because those were appropriate duties because women could handle the phones better than men. Moreover, Mr. O'Hayre made the statement that a male employee was not a clerical type." Although O'Hayre admits describing Sekerak's duties as clerical, he denies the allegation that such a description was gender-based. That determination, however, is a factual one not suited for resolution at the summary judgment stage.[3]

■ Although not addressed explicitly in the City's brief, the Court feels compelled to address the issue of pretext. The City apparently argues Sekerak was reassigned not on the basis of her gender, but instead on the basis of complaints regarding the untimeliness of projects under Sekerak's control and the alleged general consensus that the "job was too much for one person" to handle. Thus, the. Court assumes the City submits as a legitimate, non-discriminatory explanation that Sekerak was reassigned for the sake of efficiency. In contrast to this explanation, however, is the fact that before her reassignment Sekerak's superiors had never complained about her job performance and in prior appraisals had consistently rated that job performance as "outstanding." These facts alone constitute sufficient evidence of pretext to permit a reasonable jury to infer discriminatory motive. *See Randle v. City of Aurora,* 69 F.3d 441, 453 (10th Cir.1995), *quoting Washington v. Garrett,* 10 F.3d 1421, 1433 (9th Cir.1993) ("[I]t is for the trier of fact to decide which story is to be believed.").

#### (b) Retaliation Claim

■ To establish a prima facie case of unlawful retaliation Sekerak must show: (1) she engaged in protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) an adverse

---

**3.** Defendant submits that the reference to clerical duties is a gender neutral remark that, according to *Heim v. State of Utah,* 8 F.3d 1541, 1547 (10th Cir.1993), should be ignored. Defendant, however, misapprehends the principle at issue in *Heim.* The Court there held only that gender neutral statements may not serve as direct evidence of discrimination under Title VII. The rationale for seeking to have evidence identified as "direct evidence" is self-obvious when it is considered that presentation of direct evidence of

discrimination allows a Plaintiff to bypass entirely the McDonnell Douglas burden shifting framework. *See id.*. at 1546. But the fact that gender neutral statements may not be considered direct evidence of discrimination has no bearing on the fact that general neutral statements may, along with other evidence, serve as circumstantial evidence of discrimination in cases like this where the burden shifting framework applies. *See Ramsey v. City and County of Denver,* 907 F.2d 1004, 1008–09 (10th Cir.1990).

action was taken by the City in anticipation of, contemporaneously with, or subsequent to, Sekerak's engagement in the protected activity; and (3) a causal connection between the engagement in protected activity and the City's action. *See Sauers v. Salt Lake County,* 1 F.3d 1122, 1128 (10th Cir.1993); *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 635 (10th Cir.1988).

■ Contrary to the City's argument, the Court finds Sekerak has met her prima facie burden. Sekerak's vocal support of Reed after Reed filed an EEOC charge and was subsequently demoted, Sekerak's complaints to individuals and supervisors within the Department regarding its discriminatory treatment of Reed, and Sekerak's complaints regarding her intent to file her own EEOC charge constitute protected activities under Title VII. *See Starks v. Coors Brewing Co.,* 954 F.Supp. 1463, 1469 (D.Colo.1997). And, as discussed above, Sekerak was adversely affected by the reassignment of her duties. Thus, the only issue meriting discussion is whether a causal connection can be said to exist between the City's reassignment of Sekerak and her engagement in protected activity.

The Court finds a reasonable jury could infer such a connection. O'Hayre, the very person who altered Sekerak's job duties and stripped her of her building manager title, affirmed in his deposition that he was aware even before he assumed his position in June 1995 that "it was evident from, according to reports I got back, that [Reed and Sekerak] were going to make a complaint and file a suit." Further, in her first job evaluation after filing her EEOC charge and expressing to those in the office her intent to sue, Sekerak's performance rating was lowered from "outstanding" to "exceeds expectations." Although not overwhelming, this evidence is sufficient to support an inference that Sekerak was subjected to unlawful retaliation. *See Anderson,* 861 F.2d at 635.

**2. Section 1983 Claims**

Sekerak alleges pursuant to 42 U.S.C. § 1983 that the City violated her First and Fourteenth Amendment right to freedom of association/speech and her Fourteenth

Amendment right to due process. Before considering the merits of these arguments, the Court must consider whether the facts here are sufficient to even give rise to municipal liability.

Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

■ It is well-settled that a municipality, such as the City of Denver in this instance, is a "person" subject to § 1983 liability. *See Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is not so well-settled what circumstances are sufficient to give rise to municipal liability. Resolution of that issue requires determining on a case by case basis whether the particular facts fall within the broad guidelines established by the Supreme Court. The following, at least, is clear: § 1983 does not impose respondeat superior liability on municipalities for the constitutional torts of their agents, but only for the deprivation of rights caused by a municipality's own policy or firmly entrenched custom. *See Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Such customs or policies may be found to exist if: (1) there is an express policy that causes a constitutional deprivation; (2) there is an allegation that the constitutional injury was caused by a person with final policymaking authority; or (3) there is a widespread practice that even though not expressly authorized is nonetheless so permanent and well settled as to constitute a custom or usage with the force of law. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 122–23, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

Sekerak does not allege with respect to either of her § 1983 claims that a City policy expressly authorizes a deprivation of her rights. With respect to her First Amend-

ment claim, she submits first that O'Hayre—her supervisor and Division Chief—was a final policymaker whose edicts or acts bind the City, and second that the evidence establishes a City custom of reassigning and demoting those who exercise their freedom of association and speech rights. With respect to her due process claim, she argues only that the Career Service Authority was a final policymaker that deprived her of her due process right to appeal her job classification. The Court will consider Sekerak's contentions in turn.

### (a) First Amendment Claim

#### (i) Policymaking

 Sekerak asserts that O'Hayre was a final policymaker and that his retaliatory decision to reassign her was for all intents and purposes a decision of the City itself. Whether a person possesses final policymaking authority is an issue for the Court to determine based on state and local law. The Court should consider: (1) whether the official is meaningfully constrained by policies not of the official's own making; (2) whether the official's decisions are final or are instead subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority. *See Praprotnik*, 485 U.S. at 127; *Randle*, 69 F.3d at 447–48.

Under this analysis, O'Hayre cannot be said to be a final decisionmaker. His decisions with respect to Sekerak and any other individual under his supervision were constrained by policies not of his making but of the making of the Career Services Board. Furthermore, and dispositive here, is the fact that all of the actions complained of by Sekerak were subject to review by that same Board, which is the City's undisputed policymaking arm. The clear trend of authority since *Praprotnik* holds that an official whose actions are subject to meaningful review is not a final policymaker and may not unilaterally bind the municipality. *See e.g., Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 652 (8th Cir.1998) ; *Radic v. Chicago Transit Auth.*, 73 F.3d 159, 160–61 (7th Cir.1996); *Randle*, 69 F.3d at 447–48;

*Martinez v. City of Opa–Locka*, 971 F.2d 708, 713–15 (11th Cir.1992) (allowing case to proceed because City Manager's decisions not constrained by review); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340–41 (5th Cir.1989); *Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir.1988); *Payung v. Williamson*, 747 F.Supp. 705, 708–09 (M.D.Ga.1990). In this respect, the Court disagrees with Sekerak that the review available to her was not meaningful. Each of the alleged discriminatory actions taken against her were subject to review first by the Career Service Authority Hearing Officer and second by the Career Service Board. All Sekerak had to do to obtain such review was file a grievance within ten days of the alleged action. As for Sekerak's separate argument that the Career Service Authority Rules do not permit a one-time meaningful review of the totality of the retaliatory actions taken against her, the Court directs her attention to Rule 19–10, which specifically provides a right to appeal "[a]ny action of any officer or employee resulting in alleged discrimination because of race, color, creed, national origin, sex, age, *political affiliation*, sexual orientation, or disability...."

The Court's finding as to O'Hayre's status as a policymaker is supported by *Luna v. City and County of Denver*, 718 F.Supp. 854 (D.Colo.1989), and *Casados v. City and County of Denver*, 924 P.2d 1192 (Colo.App. 1996). The courts in both *Luna* and *Casados* considered issues similar to those presented here and concluded that the Career Service Board, rather than an individual supervisor or employee or even a hearing officer, is in most cases the final policymaker with respect to the City and County of Denver's personnel decisions and employment policies. *See Luna*, 718 F.Supp. at 858–59; *Casados*, 924 P.2d at 1196. The Court agrees, and therefore finds O'Hayre is not a final policymaker whose acts and edicts alone were sufficient to constitute City policy.

#### (ii) Municipal Custom

 Sekerak seeks in the alternative to hold the City liable based on the application of a purported municipal custom. To prevail on this basis, Sekerak must show that

there exists a persistent and widespread practice so permanent and well settled as to constitute a custom or usage with the force of law. *See Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir.1996). A custom or policy is not established merely by alleging one unique incident in which the plaintiff suffered a deprivation; instead, the plaintiff must demonstrate a specific pattern or series of incidents that support the general allegation of a custom or policy. *See Henry v. Farmer State Bank,* 808 F.2d 1228, 1237 (7th Cir. 1986).

The City argues that the number of incidents alleged by Sekerak is too minimal to permit any reasonable inference that a municipal custom exists. While the Court agrees that Sekerak's case hangs by a thin reed, it disagrees that a custom may not be shown on the evidence. In two separate cases, courts of this Circuit have specifically rejected § 1983 claims based on municipal custom or policy where the plaintiff has not alleged the existence of similar discrimination as to others. *See Randle,* 69 F.3d at 447; *Singer v. Denver Sch. Dist.,* 959 F.Supp. 1325, 1329–30 (D.Colo.1997). The courts in both those cases noted specifically the Supreme Court's statement in *Praprotnik* that the plaintiff there—who was alleging existence of a municipal custom—had not "attempted to prove that such retaliation was ever directed against anyone other than himself." *Praprotnik,* 485 U.S. at 128. The Tenth Circuit Court of Appeals relied on this same language in noting in *Melton v. City of Oklahoma City* that a plaintiff's proof that one other person had been subjected to similar discrimination "might also be sufficient to show the existence of an unconstitutional municipal policy giving rise to section 1983 liability." 879 F.2d 706, 725 n. 26 (10th Cir. 1989).

Unlike the plaintiffs in *Randle, Singer,* and *Praprotnik,* Sekerak has presented evidence not merely of a single incident directed against her, but of retaliation incidents directed against three other individuals as well. These three individuals and Sekerak were reassigned, demoted, or transferred to unwanted positions after expressing support for DeGroot and attending DeGroot campaign meetings, including the meeting at which Sergeant Judy Will admitted she was writing down the names of Department employees in attendance to give to Webb and Chief of Police Michaud. At the time, Will was an aide to Chief Michaud and a vocal Webb supporter.

As for the City's contention that O'Hayre's deposition testimony indicates a lack of awareness of the political affiliations of Sekerak or any other of the affected individuals, the Court notes that summary judgment is not appropriate merely because an individual denies the alleged charge. If so, then no plaintiff could survive a Rule 56(c) challenge. Instead, and particularly in cases such as this, it is sufficient for victims of "heavy-handed uses of the spoils system" to rely on circumstantial evidence to prove their cases; it is not necessary to produce a smoking gun. *Anthony v. Sundlun,* 952 F.2d 603, 605 (1st Cir.1991). Furthermore, "[wh]at an actor says is not conclusive on a state-of-mind issue. Notwithstanding a person's disclaimers, a contrary state of mind may be inferred from what he does and from a factual mosaic tending to show that he really meant to accomplish that which he professes not to have intended." *Id.* at 606.

The Court finds that when viewed in the light most favorable to Sekerak, the evidence is sufficient to permit an inference of a municipal policy or custom of retaliating against employees who expressed their freedom of association rights to the dissatisfaction of the City. *See Cannon v. City and County of Denver,* 998 F.2d 867, 878 (10th Cir.1993) (less than a dozen incidents over a two-year period with respect to five separate anti-abortion protesters sufficient to create factual issue as to municipal custom or policy of harassment); *Daniels v. City of Chicago,* 920 F.Supp. 901, 904. (N.D.Ill.1996) (two incidents of aggravated police misconduct without the imposition could support inference of municipal policy); *see also Perkins v. Village of Lincolnshire,* 1996 WL 613159, *3 .(three incidents of conduct sufficient to withstand motion to dismiss on claim of municipal custom or policy).

**1200**

**(b) Due Process Claim**

■ With respect to her § 1983 claim for violations of her due process rights, Sekerak argues that as a final policymaker the Career Service Authority, acting via its Personnel Bureau official Laura Abeyta–Martinez, deprived her of her right to appeal her job classification. This claim fails as a matter of law because Sekerak's contention that she was denied the right to appeal her job classification is simply unsupported by the record before the Court.

In support of her argument, Sekerak cites only a letter given her by the Career Service Authority stating that Sekerak's *proposed* job classification was Facility Maintenance Coordinator and informing her that should she desire to be heard by the Career Service Board at a July 27, 1995 public hearing she must provide notice no later than July 20. Because Sekerak desired this position, she of course did not wish to be heard. Sekerak's instant complaint emanates from the fact that she did not in fact receive her proposed job classification of Facility Maintenance Coordinator but was instead classified as a Facility Maintenance Liaison. Sekerak contends she was denied her right of appeal because she was not notified of her actual classification until July 27, 1995, the day of the public hearing and a full week after the deadline for notifying the Board of intent to be heard. Sekerak ignores completely, however, the Career Service Rules provisions allowing her to appeal any job classification within ten days after the decision is rendered. *See* Def. Ex. 17, p. 7–5. Thus, in direct contradiction to Sekerak's argument, an established mechanism for appealing job classifications was available to her but not employed by her. As such, any deprivation of her due process rights was not orchestrated by the Career Service Board but by Sekerak herself. *See Parratt v. Taylor,* 451 U.S. 527, 542–45, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (plaintiff may not complain of due process violation if he did not utilize appeal process).

### Conclusion

Based on the foregoing, the Court **ORDERS** that Defendant City and County of Denver's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** Specifically, Defendant's Motion is **GRANTED** with respect to Plaintiff's § 1983 Due Process claim in its entirety and as to Plaintiff's § 1983 First Amendment claim to the extent Plaintiff seeks to impose municipal liability based on the status of O'Hayre as a final policymaker. Defendant's Motion is **DENIED** with respect to Plaintiff's Title VII claims based on gender discrimination and retaliation, and as to Plaintiff's § 1983 First Amendment claim based on a purported municipal custom or policy.