Debbie HEIM, Plaintiff–Appellant,

v.

STATE OF UTAH; Utah Department of Transportation; Dale Tischner, Defendants–Appellees.

No. 92–4134.

United States Court of Appeals, Tenth Circuit.

Nov. 16, 1993.

Roger H. Hoole of Nebeker & Hoole, P.C., Salt Lake City, UT, for plaintiff-appellant.

L.A. Dever, Asst. Atty. Gen. (R. Paul Van Dam, Atty. Gen., Debra J. Moore, Asst. Atty. Gen., with him on the brief), Salt Lake City, UT, for defendants-appellees.

Before BRORBY, McWILLIAMS, and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

In this sex discrimination case, plaintiff Debbie Heim appeals the district court's factual findings that gender was not a factor in her denial of desired training for job advancement. Presented at trial were her claims alleging appellees violated Title VII of the Civil Rights Act of 1964, and alleging the Utah Department of Transportation and Mr. Tischner, her supervisor, sexually harassed her in the form of a hostile work environment and quid pro quo sexual harassment.[1]

Specifically, Ms. Heim challenges, as clearly erroneous, the trial court's findings that (1) she was primarily assigned to work in the office; (2) she had not been treated differently than a male coworker also assigned to work in the office area; (3) her employer was not required to provide the desired "cross-training" because appellant sought field assignments on only a temporary and not on a permanent basis; (4) she had not been denied cross-training and overtime work based upon her gender; and (5) the denial of cross-training did not result in delayed advancement and loss of accompanying past and future income and benefits. We affirm the trial court's findings.

## I

This court reviews the trial court's findings of fact under the clearly erroneous standard. Fed.R.Civ.P. 52(a). "A finding of fact is not clearly erroneous unless 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'" *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir.1990) (quoting *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir.1987)).

■ We defer to the trial court's determination of the credibility of witnesses and other determinations of disputed facts. *Hauptli v. Commissioner of Internal Revenue*, 951 F.2d 1193, 1195 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1955, 118 L.Ed.2d 558 (1922).

Debbie Heim is a construction technician employed by the Utah Department of Transportation. She worked on a crew composed of eleven construction technicians. She was the only female member of the crew. The Department of Transportation subclassified construction technicians into construction office technicians, survey technicians, and construction inspectors. On Ms. Heim's particular crew, the various classifications of construction technicians worked in four main areas—office, field lab, survey, and inspection. Ms. Heim was hired for a position in the office area under the supervision of Dale Tischner. She alleges that she was denied the opportunity to cross-train in field positions in other areas solely because of her gender.

In this case, Ms. Heim uses the term "cross-training" to mean actual experience in the field in areas other than those in which she was experienced as part of her duties in the office. The trial court noted that the Department and its employees sometimes used the term in this sense as synonymous with "field experience" or "on-the-job training a Construction Technician obtains in another specialty."

The trial court noted the term cross-training was also used within the Department of Transportation to refer to the situation where an employee was deemed capable of performing specialized skills that were needed to work in another area of a project. In this sense, cross-training occurred where an employee passed a segment of the National Institute for Certification in Engineering Technologies (NICET) exam. The NICET test, a nationally recognized testing program for construction technicians, has been adopted by the Department as part of its job classification and promotion procedures.

Construction technicians are assigned a grade, which determines their base salary. When an employee passes a certain level of the NICET test, he or she is then deemed cross-trained and qualified for either a within-in-grade pay increase or a promotion to a higher paying grade—depending upon the level of the test passed and the availability of positions in the higher grades. Construction

---

1. Ms. Heim does not appeal the ruling against   her on the sexual harassment claims.

technicians can advance from a beginning grade of 13 to top grades of 21 to 23. Ms. Heim was hired at a beginning grade of 13.

Actual field experience is helpful in passing the NICET tests. However, it is not a necessary prerequisite and technicians are permitted to take tests in areas in which they have no field experience. If a technician passes the portion of the NICET test in an area in which he or she has no actual field experience, the Department considers that person nonetheless cross-trained in that area and eligible for grade advancement.

Ms. Heim wanted cross-training, in the sense of actual experience in various field jobs, for two reasons. One, such field position provided an opportunity to work overtime hours for extra pay. Two, it provided experience that helped an applicant pass the various parts of the NICET test.

In August of 1989, Ms. Heim arranged a temporary transfer out of the office to a field position. To obtain permission for this temporary transfer, Ms. Heim had to bypass her supervisor because he resisted allowing her to leave her duties in the office area. She received extra pay for the overtime hours she worked during the field assignment. She later arranged permission for another such temporary transfer, again by bypassing her immediate supervisor. This permission was almost immediately withdrawn because Mr. Tischner, her supervisor, complained she had not completed her office duties.

## II

### A

Ms. Heim first challenges the trial court finding of her office work assignment. Ms. Heim's own testimony established she was hired to work in the office area, and therefore, this finding is not clearly erroneous.

■ Second, the trial court found Ms. Heim was not treated differently than the only other construction technician on the crew to be assigned primarily to the office—Mr. Gail Leary. The evidence established Mr. Leary was even more limited to strictly office functions than Ms. Heim. The testimony established Ms. Heim's immediate supervisor, Mr. Tischner, wanted to keep his office area technicians in the office area in order to exercise control over them. In seeking to tightly control the technicians assigned to office duties under him, Mr. Tischner was not treating Ms. Heim differently due to her gender; instead, he treated the male and the female workers "generally the same."

The fact both a male employee and a female employee were subclassified as having primarily office area duties and were treated no differently within the subclassification, weakens the appellant's theory that she was singled out for different treatment because she was the only female construction technician on the crew.

Again, the court's finding Ms. Heim had not been treated differently than her male coworker assigned to office duties was not clearly erroneous.

■ Third, the trial court found the lack of overtime received by Ms. Heim was the result of her assignment to duties in the office area. The record shows the field construction technicians had an opportunity to work extra hours and receive overtime pay. As Mr. Leary testified, the "bulk of overtime was worked in the field and a minute part from office personnel." Mr. Leary received far less overtime hours than did Ms. Heim because he had not worked outside the office area.

The record fully supports the trial court's finding that overtime work was not available to Ms. Heim because her duty station was in the office. Therefore, its finding that her gender was not the reason for her receiving less overtime is not clearly erroneous.

■ Fourth, appellant mischaracterizes the trial court's findings as stating she "could not cross-train because she was 'sub-classified'" as an "office" construction technician. The trial court did not find she was prevented from cross-training by her sub-classification. Instead, it found the method of cross-training she sought—temporary field assignments for the purpose of expanded work experience—was not available.

No male construction technician was allowed to cross-train by the temporary assignment to another area for the sole purpose of providing an employee with expanded work experience. Cross-training, in the sense of varied field experience, was only available either by "helping out" in other jobs in the same area during slack time (called cross-utilization) or by a permanent transfer to another area. Ms. Heim did not seek a permanent transfer to another area where field experience would be available on a regular basis. In addition to informal occasions of "helping out" on job sites, temporary transfers were available *for the purpose of* helping out in areas where they were short-handed.

Appellant argues that the policy of the Department was to allow and encourage cross-training. Although this is true, the record shows no policy of temporary transfers *for the sole purpose of* allowing employees to gain experience in other fields. Additionally, for all purposes, the Department of Transportation considered passing the NICET exam to be the cross-training they encouraged.

Each side in this case points to different statements in the same testimony as supporting their positions. It appears the use of the term cross-training resulted in some inconsistencies in the testimony because it had different meanings depending upon the context or the questioner. In fact, according to one construction technician, Mr. Greg Herrington, the meaning of the term changed as a result of the filing of this lawsuit. This change resulted in inconsistencies when the term was used at trial to refer to past events and policies.

■ When a witness's testimony is inconsistent, we defer to the trial court's determination of facts. Having reviewed the entire record, we find the trial court's finding that the Department was not required to provide appellant with the demanded cross-training by means of temporary instead of permanent transfers, fairly and accurately reflects the entire record in this case. Similarly, the trial court's finding Ms. Heim was not denied desired cross-training because of her gender is not clearly erroneous.

■ Finally, the record does not establish appellant suffered delayed advancement or any loss of accompanying income as a result of actions of the appellees. It is pure speculation for Ms. Heim to assert that if she had been able to obtain field experience through the type of temporary assignments she sought, she would have passed the NICET test level for grade 21, and achieved the grade in approximately the same time as did several of her coworkers.

Before she obtained any field experience, Ms. Heim passed three of the levels of the NICET test, enabling her to achieve all of the automatic grade increases available. Thus, she progressed by means of the testing from her starting grade of 13 to a grade of 18. Any advancement past her grade of 18 would not merely be a matter of passing the NICET grade 21 test, because it would involve competing against other 21 grade qualified applicants seeking the limited number of positions.

Ms. Heim's advancement to a grade 18, without the type of temporary transfers she sought, shows temporary transfers for the purpose of gaining expanded work experience were not necessary to pass the NICET test.

**B**

On these factual grounds, Ms. Heim cannot establish a prima facie case of gender discrimination under Title VII. Having reviewed the entire record, we find the trial court's findings of fact are fully supported by the evidence and therefore are not clearly erroneous.

■ The trial court correctly analyzed the disparate treatment claim using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, a complainant in a Title VII case

must carry the initial burden ... of establishing a prima facie case of ... discrimination. This may be done by showing (i) that [s]he belongs to a [protected class]; (ii) that [s]he applied and was qualified for a job which the employer was seeking ap-

plicants; (iii) that, despite [her] qualifications, [s]he was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802.

Appellant did not establish essential elements of her claim of sexual discrimination—that she applied for training the employer was offering and despite being qualified was rejected for that training while the employer continued to offer the training to others of her qualifications. In this case, the temporary field assignments *for the purpose of* expanded work experience were not offered to, or available to, other employees.

The trial court found that appellant had not met her burden of establishing a prima facie case; therefore, the second step of the *McDonnell Douglas* test is not at issue in this appeal. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824 (burden shifts to the employer to articulate "legitimate, non-discriminatory reason for the employee's rejection" only if the complainant has proved a prima facie case.) Because we have determined that the trial court's findings of fact are supported by the record and therefore are not clearly erroneous, its conclusion Ms. Heim did not establish she was discriminated against in her employment due to her gender, follows logically from those facts.

## C

Appellant argues in the alternative she showed direct evidence of discriminatory intent through a single offensive comment made by her direct supervisor, Mr. Tischner. She argues the *McDonnell Douglas* analysis is inapplicable where the comment was, by itself, direct evidence of discriminatory intent. Therefore, she argues the appellees can overcome this purported direct evidence "only by proving by a preponderance of the evidence that the same decision would have been reached absent the presence of the factor." *Thompkins v. Morris Brown College,* 752 F.2d 558, 563–64 (11th Cir.1985).

■ The remark at issue was made by Mr. Tischner in an angry outburst in the context of alleged problems with Ms. Heim's work with ticket books, part of her duties in the office area. The remark was: "Fucking women, I hate having fucking women in the office." Shortly after this outburst, Ms. Heim was refused permission to undertake a temporary field assignment for which she had previously been granted permission. The reason for the denial was Mr. Tischner's complaint she had not completed her office area duties.

Appellant's reliance on *Morris Brown* and other cases is misplaced because, unlike those cases, the offensive remark in question here was found *not* to be direct evidence of discriminatory intent. The trial court considered the remark and found the remark by Mr. Tischner to be "inappropriate" and directed to women in general. The court also was "not persuaded that the remark demonstrates any discriminatory intent with respect to his treatment of [Ms.] Heim."

■ In *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1007–09 (10th Cir.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992), a disparate treatment case, we examined the difference between statements that could be direct evidence of discriminatory intent and those kinds of statements that were not. Statements showing "an existing policy which itself constitutes discrimination" are direct evidence of discrimination. *Id.* at 1008. Such statements make the *McDonnell Douglas* analysis and shifting of burdens, inapplicable. *See Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1549 (10th Cir.1987) (*McDonnell Douglas's* three-part shifting burden of proof and production are inapplicable where an age discrimination plaintiff showed direct evidence of discriminatory basis for employment decision). The statements at issue in *Morris Brown* and *Bell v. Birmingham Linen Serv.,* 715 F.2d 1552 (11th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984), were direct evidence because the court in those cases found they showed an existing policy which itself constituted discrimination.

In contrast, "an offer of ... discriminatory statements, from which it was argued that the determining cause of an employment de-

cision might be inferred, [is] not direct evidence of causation on the employment decision." *Ramsey*, 907 F.2d at 1008 (citing *Furr*, 824 F.2d at 1549.)

Although the remark by Mr. Tischner was certainly inappropriate and boorish, it was on its face a statement of Mr. Tischner's personal opinion. The evidence does not show Mr. Tischner acted with discriminatory intent, only that he unprofessionally offered his private negative view of women during a display of bad temper at work. At best, it is only arguable that a discriminatory intent to keep Ms. Heim in the office can be inferred from the statement. This type of inferential statement is not "direct evidence" of discrimination satisfying the plaintiff's burden.

■ The record also reveals that during his deposition, Mr. Tischner opined Ms. Heim "occasionally swore a little bit," which in his opinion would "typically happen during her mood period of time." This second remark by Mr. Tischner is a personal opinion offered as an observation of Ms. Heim's behavior. Appellant points out the remark shows a stereotypical view of women. However, there is nothing in the record to show it was connected to an employment decision.

> Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision. In making this showing, stereotyped remarks can certainly be *evidence* that gender played a part.

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989) (emphasis in original).

"Thus, stray remarks in the workplace ... cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can ... statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden." *Id.* at 277, 109 S.Ct. 1775 (O'Connor, J., concurring) (citations omitted).

■ There is a third remark Ms. Heim alleges shows discrimination; this remark is from the trial testimony. Mr. Tischner was asked, "Did you treat her as if she had duties with respect to the survey crew, that is on the survey crew?" He responded, "No. She worked in the office. That is why she was hired, to work in the office." This statement is facially neutral. Ms. Heim admits she was hired to work in the office; her supervisor's statement to that effect is not, without something more, discriminatory.

The statements in question in this case do not show an existing policy constituting discrimination. Instead, they are only part of the evidence from which a discriminatory purpose could arguably be inferred.

As in *Ramsey*, because the statements by Mr. Tischner were "circumstantial or indirect evidence, and did not constitute direct evidence of the discrimination against [Ms. Heim].... [T]he method of analysis of the district judge was not in error." 907 F.2d at 1008.

In conclusion, we find the trial court's findings of fact are fully supported by the evidence; we find the trial court correctly found that Ms. Heim did not introduce direct evidence of discrimination; and we determine the trial court applied the correct method of analysis to reach a conclusion dictated by the evidence. We do not have a firm conviction a mistake was made.

Accordingly, we **AFFIRM**.