MAGILL, Circuit Judge.
Shelia Shorter sued her former employer ICG Holdings, Inc. (ICG), claiming she was unlawfully terminated because of her race in violation of 42 U.S.C. §§ 2000e— 2000e-17 (Title VII). She also sued ICG for breach of contract. The district court granted ICG’s motion for summary judgment, and Shorter appealed. We affirm.
I.
The following are the facts viewed in the light most favorable to Shorter, the non-moving party. Shorter, a black female, joined ICG in January 1996 as a corporate recruiter in ICG’s Department of Human Resources (HR). As a recruiter, Shorter was responsible for keeping track of ICG’s job openings, processing resumes sent to ICG, and forwarding those resumes to the appropriate hiring managers. At the time Shorter was hired, ICG was going through a period of rapid expansion.
Shorter was hired by Patricia Lawrence, then director of HR and Shorter’s supervisor. In April 1996, Lawrence left ICG, and Judy Dughman replaced Lawrence as the new director of HR. Shorter worked under Dughman’s supervision until May 15,1996, when Dughman fired her.
During the time Shorter worked for Dughman, Dughman made three race-related comments to and about Shorter. Once, while eating lunch with Shorter, Dughman asked Shorter about black men’s sex organs. On another occasion, Dugh-man told another ICG employee that Shorter talked like people of her culture, race, or color. See Appellant’s App. at 412-13.[1] During a confrontation with Shorter about Shorter’s job performance, Dughman told her, “You are just on the defensive because you are black.” Id at 407.
On May 15, 1996, Dughman fired Shorter. Dughman cited Shorter’s deficient job performance and poor attitude as the reasons for her decision. She also told another employee that she fired Shorter because Shorter was incompetent. One or two days after firing Shorter, Dughman, apparently in a fit of anger at not being able to locate an important document in Shorter’s office, referred to Shorter as an “incompetent nigger.” Id at 421.
After filing a timely charge with the EEOC and receiving a right to sue letter, Shorter filed suit against ICG alleging race and sex discrimination.[2] She also *1207 sued for breach of contract, claiming ICG did not follow its employee policy manual when it terminated her. The district court granted ICG’s motion for summary judgment.[3] This appeal followed.
II.
We review the district court’s grant of summary judgment de novo. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir.1998). Summary judgment is appropriate if the moving party can show that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. See Fed. R.Civ.P. 56(c). We view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. See McKnight, 149 F.3d at 1128.
In this case, Shorter claims she was discharged because of her race in violation of Title VII. The inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff. See EEOC v. Wiltel, Inc., 81 F.3d 1508, 1513 (10th Cir.1996) (citing USPS Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). A plaintiff may prove intentional discrimination in one of two ways: “either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered explanation is unworthy of credence.” Id. (quotation marks omitted). Shorter argues that the evidence establishes intentional discrimination under either test.
A. Direct Evidence of Discrimination
Shorter contends that Dughman’s statements constitute direct evidence of discrimination. We agree with the district court that Dughman’s statements do not constitute direct evidence of discrimination.
Direct evidence is “[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.” Black’s Law Dictionary 460 (6th ed.1990); see also Wiltel, 81 F.3d at 1514 (noting that evidence which “require[s] the trier of fact to infer that discrimination was a motivating cause of an employment decision” is at most circumstantial evidence of discrimination, not direct evidence); Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir.1997). In contrast, statements of personal opinion, even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination. See Wiltel, 81 F.3d at 1514; Heim v. Utah, 8 F.3d 1541, 1546-47 (10th Cir.1993); see also Ramsey v. City and County of Denver, 907 F.2d 1004, 1008 (10th Cir.1990) (distinguishing between direct evidence of discrimination and “direct evidence of personal bias”). At most, such statements constitute only indirect or circumstantial evidence of discrimination because the trier of fact would have to infer that the bias reflected in the statements was the reason behind the adverse employment decision. See Wiltel, 81 F.3d at 1514; Heim, 8 F.3d at 1547; Ramsey, 907 F.2d at 1008.
This case is similar to the situation we faced in Heim. In that case, the plaintiff accused her male supervisor of denying her job training opportunities because of her gender. Her supervisor, in an angry outburst over the plaintiffs performance of her duties, stated, “Fucking women, I hate having fucking women in the office.” Heim, 8 F.3d at 1546. Plaintiff argued that this comment constituted direct evidence of discrimination. We disagreed:
Although the remark by [the supervisor] was certainly inappropriate and boorish, it was on its face a statement of [the supervisor’s] personal opinion. The evidence does not show that [the supervisor] acted with discriminatory intent, only that he unprofessionally offered his private negative view of women during a *1208 display of bad temper at work. At best, it is only arguable that a discriminatory intent ... can be inferred from the statement. This type of inferential statement is not “direct evidence” of discrimination satisfying plaintiffs burden.
Id. at 1547.
Likewise, in this case, Dughman’s remarks about Shorter were statements of personal opinion. As in Heim, the statements are not direct evidence that Dugh-man fired Shorter because she was black. Instead, the trier of fact would have to infer Dughman’s motive from her statements. See Ramsey, 907 F.2d at 1008 (holding that supervisor’s stated views that certain jobs were more suitable for women than other jobs were statements of personal opinion and did not constitute direct evidence of discrimination); Furr v. AT & T Techs., Inc., 824 F.2d 1537, 1547, 1549 (10th Cir.1987) (holding that managers’ statements that plaintiffs were too old to learn new technologies and too old to be in supervisory positions were not direct evidence of discrimination; rather, remarks were “specific instances of discriminatory statements” from which the reasons for the adverse employment decision would have to be inferred).
Because Dughman’s remarks were statements of personal opinion and not statements directly relating to Shorter’s termination, we conclude that Shorter has failed to present any direct evidence of discrimination.[4]
B. Indirect Evidence of Discrimination
In the alternative, Shorter argues that she can establish her claim of intentional discrimination indirectly by relying on circumstantial evidence of discrimination. We evaluate Shorter’s claim under the familiar burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
Under the McDonnell Douglas framework, the plaintiff initially bears the burden of establishing a prima facie case of discrimination. See Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1533 (10th Cir.1995). If the plaintiff establishes her pri-ma facie case, the burden shifts to her employer to proffer a facially nondiscriminatory reason for the challenged employment action. See id. If the employer offers a nondiscriminatory reason, the burden shifts back to the employee to show that there is a genuine issue of material fact as to whether the employer’s proffered reason is merely pretextual. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997); Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir.1995). A plaintiff can establish pretext by showing “either that a discriminatory reason more likely motivated the employer ... or that the employer’s proffered explanation is unworthy of credence.” Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir.1994) (quotation marks omitted) (alteration in original).
We assume without deciding that Shorter established a prima facie case of race discrimination in her termination. Thus, we consider whether ICG proffered a facially nondiscriminatory reason for Shorter’s termination. See Reynolds, 69 F.3d at 1533.
ICG’s proffered reason for terminating Shorter is inadequate job performance. In support of this reason, ICG offered extensive evidence of Shorter’s inability and failure to do her job. Patricia Lawrence, the person who hired Shorter, testified that Shorter lacked fundamental recruiting *1209 skills and contacts in the field, a background which Lawrence believed Shorter possessed when she hired her. When Lawrence left ICG, she told Dughman that, of all the employees in HR, Shorter would require the most time for development. Dughman testified that she received numerous and repeated complaints from ICG executives about Shorter’s performance. For example, several ICG executives complained that Shorter provided them with inaccurate data about the number of job openings within ICG. In addition, clients complained that Shorter did not follow through after meetings with them.
Dughman’s supervisor, John Field, also received numerous complaints about Shorter’s performance which he passed along to Dughman, including that Shorter was not locating qualified candidates and was not following up on her recruiting duties. Field also testified that he had received similar complaints about Shorter’s performance while Lawrence was her supervisor. According to another ICG employee, Shorter told him that she had no system in place for processing resumes and forwarding them to the appropriate hiring managers. This employee stated that resumes in Shorter’s office were misfiled or lost, advertising invoices had not been paid, and open job positions within ICG were not listed in her reports to management. Two days before Dughman fired Shorter, Dughman and Shorter had a meeting regarding complaints from yet another HR employee about Shorter’s poor job performance.
This evidence satisfies ICG’s burden to provide a legitimate, nondiscriminatory reason for ICG’s decision to terminate Shorter. Thus, for her claim to survive summary judgment, Shorter must show that there is a genuine issue of material fact as to whether ICG’s proffered reason is a mere pretext for discrimination. See Randle, 69 F.3d at 451. To support her claim of pretext, Shorter cites evidence that she claims demonstrates she was performing her job satisfactorily. Shorter also cites Dughman’s statements as evidence of pretext.
Shorter does not challenge, let alone rebut, the myriad complaints offered by ICG regarding her deficient job performance. Shorter cites a handful of e-mails which she claims reflect her satisfactory job performance. However, only two of these e-mails arguably support her claim, and these refer to just two different tasks among the many she was required to perform. This e-mail correspondence hardly begins to rebut the overwhelming evidence of Shorter’s inadequate job performance. Moreover, these e-mails were sent in March 1996 by her former supervisor, and ICG has proffered extensive complaints about Shorter’s deficient performance after this time and while under Dughman’s supervision. Shorter also cites the testimony of another ICG employee who stated he was surprised when he heard Shorter was fired. However, he explained that he was surprised only because he had not personally heard any complaints. He also testified that he had no basis to evaluate Shorter’s job performance. Finally, Shorter cites her background in human resources and her own affidavit stating that she believed her work was satisfactory. However, “[i]t is the manager’s perception of the employee’s performance that is relevant, not plaintiffs subjective evaluation of [her] own relative performance.” Furr v. Seagate Techs. Inc., 82 F.3d 980, 988 (10th Cir.1996). Thus, we conclude that the meager evidence offered by Shorter is insufficient to meet her burden to show that ICG’s proffered reason for firing her was pretextual. See Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir.1997) (“The mere existence of a scintilla of evidence in support of the non-movant’s position is insufficient to create a dispute of fact that is genuine .... ” (quotation marks omitted)).
Shorter also argues that Dughman’s comments demonstrate that ICG’s proffered reason for firing her was pretextual. Although such comments may serve *1210 as circumstantial evidence of discrimination, see Wiltel, 81 F.3d at 1514, the plaintiff must still show some nexus between the statements and the defendant’s decision to terminate the employee. See Rea, 29 F.3d at 1457 (“ ‘Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.’ ” (quoting Cone v. Longmont United Hosp. Ass’n, 14 F.3d 526, 531 (10th Cir.1994))).
Although some of the remarks were directed at Shorter, there is nothing in the statements that link them to Dughman’s decision to terminate her. Compare Tomsic v. State Farm Mut. Auto. Ins. Co., 85 F.3d 1472, 1474, 1479 (10th Cir.1996) (holding supervisor’s statements supported inference of sex discrimination when supervisor told plaintiff she would not succeed in training program, that she would lack incentive because her husband made too much money, and asked about her marital relationship, while at the same time telling others that plaintiff would be fired) with Hong v. Children’s Mem’l Hosp., 993 F.2d 1257, 1265-66 (7th Cir.1993) (holding that supervisor’s statement to Korean employee that she should “learn to speak English,” when there was no evidence that employee spoke anything other than English, did not create inference of discrimination absent evidence statement was related to decision to discharge her (quotation marks omitted)), cited in Cone, 14 F.3d at 531. The fact that Dughman was Shorter’s supervisor does not automatically establish the requisite nexus. See Hong, 993 F.2d at 1266 (holding that supervisor’s occasional use of racial slurs “directed at an employees’ [sic] race ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements were uttered by a decision maker”); see also McKnight, 149 F.3d at 1129 (“In order to rely on [allegedly discriminatory] statements, [plaintiff] must show that they were made by a decision maker, and that there was a nexus between the discriminatory statements and the decision to terminate.” (emphasis added)).
We thus conclude that ICG has presented a legitimate nondiscriminatory reason for Shorter’s termination and that Shorter has not presented evidence sufficient to suggest that this reason was pretextual. The district court properly granted summary judgment for ICG on Shorter’s race discrimination claim.
III.
Shorter’s final claim is that ICG breached an implied contract with her because Dughman did not follow the termination procedures described in ICG’s employee policy manual. Because Shorter was an at-will employee, she must rebut the presumption of at-will employment to prevail on her claim. See Orback v. Hewlett-Packard Co., 97 F.3d 429, 432 (10th Cir.1996).
An employee policy manual can create an implied contractual relationship with an employee if it evidences an offer by the employer to the employee to be bound by certain procedures when terminating employment. See id. at 433. In order for the employer to be bound, the “manual must be communicated to the employee.” Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1464 (10th Cir.1994). If the employer does not provide a copy of the manual to the employee, there is no binding offer by the employer to the employee. See Orback, 97 F.3d at 433. In Shorter’s case, it is undisputed that she never received a policy manual from ICG. Because ICG did not provide a manual to Shorter, the manual was not a contractual offer to her. See id. (rejecting plaintiffs implied contract claim when manual not provided to employees, even though some testified that they had access to it and one had seen portions of it). Thus, Shorter cannot recover for breach of implied contract.
Even though Shorter cannot prevail on her implied contract claim, she may nevertheless be able to recover under *1211 a theory of promissory estoppel. See Va-sey, 29 F.3d at 1466. In order for Shorter to recover under a promissory estoppel theory, she must demonstrate, inter alia, that she reasonably relied on the termination procedures to her detriment. See id. Shorter, however, presented no evidence that she read the manual and relied upon it to her detriment. Thus, Shorter cannot prevail under a theory of promissory estoppel.
IV.
For the foregoing reasons, we AFFIRM the decision of the district court.

. The employee who recounted this statement did not remember which exact term Dugh-man used.

. Shorter abandoned her sex discrimination claim in the district court.

. ICG also filed a cross-claim for abuse of process. The district court granted Shorter's motion for summary judgment on the abuse of process claim. ICG does not appeal that decision.

. Shorter also argues that she was entitled to a "mixed motives” analysis. Generally, a mixed motives analysis only applies once a plaintiff has established direct evidence of discrimination. See Wiltel, 81 F.3d at 1514-15. Moreover, because Shorter did not raise the mixed motives argument below, she has waived it on appeal. See Tele-Communications, Inc., v. Commissioner, 104 F.3d 1229, 1232 (10th Cir.1997) (appellate court will not consider issue raised for the first time on appeal, particularly when dealing with an appeal from a grant of summary judgment).