**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PRISCILLA FALCON,

      Plaintiff-Appellant,

v.

TRUSTEES OF THE STATE
COLLEGES IN COLORADO,

      Defendant-Appellee.

No. 99-1318

(D.C. No. 97-WM-216)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **EBEL**, and **MURPHY**, Circuit Judges.

Defendant Adams State College in Alamosa, Colorado, denied Plaintiff

Priscilla Falcon's tenure application, citing problems with her teaching

effectiveness. Plaintiff sued her former employer alleging national origin and sex

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e to 2000e-17 . The district court granted summary judgment in favor of

Defendant, concluding that Plaintiff failed to raise a fact issue regarding pretext.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff appeals.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291.  We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court.  <u>Jones v. Denver Post Corp.</u>, 203 F.3d 748, 751 (10th Cir. 2000).  Applying this standard, we affirm.

I.

Plaintiff is a Hispanic female.  Her area of teaching expertise is political science, especially Latin American history and Chicano studies.  Defendant initially hired Plaintiff in 1989 to teach in the Department of History, Government, and Philosophy (HGP).  In 1990, Defendant offered her a tenure-track position.  Her course load usually included one or two sections of a course entitled Development of Civilization and one or more upper-division courses about the southwestern United States, Mexico, and Latin America.  Her course materials stressed anti-imperialist and anti-colonial themes.

Since 1990, Defendant has hired tenure-track faculty for a series of five probationary one-year contracts, followed by a decision whether to grant tenure or offer a final one-year contract.  At the end of each probationary year, the tenured faculty in the department vote on retention.  A positive recommendation requires a two-thirds majority.  During the five probationary years, the professor may apply for a promotion from assistant professor to associate professor.  All tenured and non-tenured faculty members in a department vote on the promotion.

-2-

According to Defendant's handbook, the criteria for granting tenure are (1) teaching effectiveness, (2) professional development and scholarship, and (3) service to the college and the community. The first factor, teaching effectiveness, is the most important and is a prerequisite for granting a tenure application. Teaching effectiveness is judged by (1) self evaluations, (2) student evaluations, (3) peer evaluations, and (4) supervisor evaluations. The department head's evaluation form includes teaching effectiveness, scholarly development, and professional service, without specific weighting. On the Dean's evaluation form, teaching effectiveness accounts for 60% of the total evaluation; within that, student evaluations constitute 25% of the total evaluation and department head and Dean evaluations constitute 35% of the total evaluation.

The probationary faculty member begins the tenure review process by applying to the Dean of the school. Her application includes an evidence folder containing class materials, information on recent scholarship, and reports on community involvement. A tenure committee, consisting of all of the tenured faculty in the department, votes on whether to recommend tenure. As with retention, a positive recommendation requires a two-thirds majority. The department head then passes the recommendation on to the Dean of the school. The Dean independently reviews the tenure applicant's record and makes a recommendation to the Vice President for Academic Affairs. The Vice President

also reviews the file and makes a recommendation to the President of the college, who makes a final determination.

In January 1991, October 1991, and September 1992, the HGP department's tenured faculty unanimously voted to retain Plaintiff. Based on observations of her upper-division courses, Plaintiff's colleagues and supervisors believed she was a competent teacher. Dean John Frazee personally observed Plaintiff's upper-division courses in spring 1992 and spring 1993. His evaluation form noted that she was taking steps towards finishing her dissertation and was delivering papers at conferences. Also, he complimented her contributions to the school and the community.

Plaintiff's colleagues' views changed, however, evidently in response to her difficulty with the lower-division class, Development of Civilization. Professor John McDaniel, who became department head in 1994, noted that the Development of Civilization class is especially important because it (1) is required of all students at Adams State College, (2) is used to recruit majors for the HGP department, and (3) makes up half of the teaching load of probationary faculty members. He also noted that Development of Civilization is a difficult class to teach because there is so much historical material to cover. In fall 1993, Frazee observed a session of Plaintiff's Development of Civilization course and found the teaching methods wanting. He noted that Plaintiff lectured by dictating

-4-

from her notes. Also, he concluded that she used class time poorly by spending the first fifteen minutes listing assignments and dismissing the class ten minutes early. Frazee took notes on his class observation and filed a report.

In October 1993, the tenure committee voted 2-2 not to retain Plaintiff. The department head, Robert Buchanan, forwarded this recommendation to Frazee. Based on his observation, Frazee agreed that Plaintiff should not be retained because of her lack of teaching effectiveness. Despite this criticism, Vice President Gary Peer decided to retain Plaintiff, noting that she may not have been fully aware of the problems and deserved a chance to improve. Also, he noted that during the preceding year Plaintiff was completing her dissertation. After the retention controversy, Buchanan and Professor Dwight Crowder proposed that Plaintiff teach only upper-division courses, which she taught effectively. However, McDaniel and Professor Ed Crowther noted that all of the faculty in the small department needed to share the duty of teaching Development of Civilization. Plaintiff continued to teach both upper- and lower-division courses.

Plaintiff alleges that during this period her colleagues in the HGP department showed signs of discriminatory treatment. She testified at her deposition that her fellow professors, especially Crowther, made ethnic comments and jokes about her. She also attested that Crowther made the sign of the cross

and muttered mock Latin in her presence. Purportedly Crowther and McDaniel criticized her courses as "Anglo-bashing" and "America-bashing." Crowder believed that McDaniel and Frazee applied school policies more stringently to Plaintiff. In particular, Crowder indicated Frazee required Plaintiff to find substitute teachers every time she missed class, while allowing Crowder to cancel class without a substitute. Further, Plaintiff did not receive their support to remove troublemaking students from her class. Also, once he became department head, McDaniel made exceptions for students who wanted to avoid Plaintiff's classes to the department's policy of requiring every student to take a class from every professor in the department. Finally, Crowder noted that Frazee unsuccessfully tried to abolish the Hispanic Southwestern Studies major, of which Plaintiff was a major proponent.

Plaintiff's difficulties continued. In spring 1994, Plaintiff applied for promotion from assistant to associate professor. The entire HGP faculty voted 4-3 against the promotion. Buchanan and Frazee agreed. Frazee noted that Plaintiff was not taking steps to remedy the teaching effectiveness problems that he pointed out to her during the retention vote process. Frazee reviewed all of Plaintiff's student evaluations in Development of Civilization since 1991. Her average, 4.29, was below the department average, 4.44, but above Buchanan's average of 3.95, and McDaniel's of 4.24. Vice President Peer and President

-6-

William Fulkerson agreed not to grant the promotion. In Peer's letter to Plaintiff, he noted that he did not want to reverse another decision of the department head and the Dean.

Despite these problems, Plaintiff applied for tenure in fall 1994. The tenure committee voted 2-2 against tenure. On their signed ballots, the professors voting against tenure, Crowther and McDaniel, cited her lack of teaching effectiveness in the Development of Civilization courses. Department head McDaniel, in a letter to Frazee reporting the committee's vote, noted that Plaintiff's average student evaluation in the Development of Civilization course in spring 1994 was 4.2, below the department average, but still higher than Buchanan's or McDaniel's. Also, Plaintiff received higher evaluations in her upper-division courses than her lower-division courses. McDaniel also criticized Plaintiff's spelling and grammar mistakes in course materials, unusual selections of course materials, and use of objective tests–although Crowder also used such tests.

Frazee agreed with the committee's recommendation to deny tenure. As before, he based his decision in part on independent classroom observation of Plaintiff's Development of Civilization course in October 1993 and October 1994. He noted persistent problems with her teaching effectiveness, especially the lecture-by-dictation teaching method. Even after Frazee's earlier admonishment

to make better use of class time, Plaintiff again dismissed class ten minutes early.

Comments in student evaluations confirmed Frazee's concerns.

Vice President Peer and Interim President Marvin Motz also agreed with the recommendation not to grant tenure. Plaintiff alleges that their decision was a rubber-stamp, pointing to Crowder's affidavit stating that in 31 years of teaching at Adams State, "I do not recall any faculty member in Arts and Letters being denied tenure when the tenured faculty members in that person's department voted to recommend approval of that professor's tenure application." Defendant offered Plaintiff a one-year terminal contract.

Plaintiff's complaint alleged that Defendant violated Title VII by denying her tenure application. [1] Defendant moved for summary judgment. In Plaintiff's response, she noted that Defendant had not yet produced documents regarding other professors' tenure applications. Shortly thereafter, Defendant produced the documents. Before Plaintiff had an opportunity to supplement her response to the motion, the district court granted summary judgment for Defendant. Subsequently, Plaintiff included the documents in a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). The district court denied that motion.

---

[1] The complaint also alleged violations of 42 U.S.C. § 1983. The district court found that Defendant was entitled to sovereign immunity and dismissed the claim pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff does not appeal that dismissal.

Plaintiff appeals the district court's granting of summary judgment for Defendant on the Title VII claim and its refusal to alter or amend that judgment.

## II.

Title VII provides that "it shall be an unlawful employment practice for an employer to . . . discharge any individual . . . because of such individual's race, color, sex, religion, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove a prima facie case of discrimination under Title VII, Plaintiff must show that (1) she is a member of the protected class, (2) she was qualified for her job, (3) despite her qualifications, she was discharged, and (4) the job was not eliminated after her discharge. Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999).

The burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) applies to Title VII discrimination claims. Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1315 (10th Cir. 1999). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. Id. at 1316. If the plaintiff does so, then the defendant must offer a legitimate, non-discriminatory reason for its adverse employment action. Id. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual. Id. In its order granting Defendant's motion for summary judgment, the district court assumed Plaintiff presented a prima facie case of discrimination and proceeded directly to the issue of pretext.

A plaintiff may demonstrate pretext by showing "either that a discriminatory reason more likely motivated the employer's proffered explanation or . . . that the employer's proffered explanation is unworthy of credence." Id. at 1317 (internal quotation omitted) (alteration in original). "[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual." Hardy v. S.F. Phosphates L.C., 185 F.3d 1076, 1080 (10th Cir. 1999) (internal quotation omitted). A prima facie case of discrimination, combined with sufficient evidence for a trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, is sufficient as a matter of law to show intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc., No. 99-536, ___ U.S. ___, 2000 WL 743663, at *8 (U.S. June 12, 2000) (ADEA).

Defendant offers Plaintiff's lack of teaching effectiveness in the Development of Civilization course as its legitimate, non-discriminatory reason for denying Plaintiff's tenure application. Concerns about Plaintiff's teaching effectiveness in that course repeatedly appear in the comments of Professors McDaniel and Crowther, Dean Frazee, Vice President Peer, President Fulkerson, and Interim President Motz. As McDaniel noted, Development of Civilization is an important class in the HGP department. The handbook provides that teaching effectiveness is the most important of the three tenure criteria and is a

-10-

prerequisite to receiving tenure. Quantitatively, the Dean's evaluation form provided that teaching effectiveness constituted 60% of the total evaluation. Accordingly, if Plaintiff's colleagues and supervisors had good faith concerns about Plaintiff's teaching effectiveness in Development of Civilization, that would have a strong effect on their decision whether to grant her tenure.

As circumstantial evidence of pretext, Plaintiff offers various comments and jokes by other HGP faculty members, especially Crowther. Plaintiff has failed to show, however, that these isolated comments are related to Defendant's decision to deny her tenure application. See Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1210 (10th Cir. 1999) ("[T]he plaintiff must still show some nexus between the statements and the defendant's decision to terminate the employee.").

Closer to the mark are Plaintiff's good student evaluations, which she offers as evidence of her teaching effectiveness. Plaintiff's student evaluations in Development of Civilization were slightly below the department average, although higher than two tenured professors' average evaluations. In a letter to another faculty member, Vice President Peer commented that student evaluations are generally a good measure of teaching effectiveness: "[S]tudies of student evaluations are rather monotonous in finding them to be reliable and valid measures of teaching effectiveness across faculty styles." Student evaluations, however, are only part of the teaching effectiveness evaluation. The handbook

-11-

lists student evaluations, peer evaluations, and supervisor evaluations as components of teaching effectiveness. Numerically, the Dean's evaluation form provided that peer and supervisor evaluations constituted 35% of the total evaluation, while student evaluations comprised 25%. In addition, McDaniel's comments and Frazee's observation reports describe problems that they felt were not reflected in the student evaluation averages. Their criticisms include her use of a lecture-by-dictation method, poor use of class time by dismissing class early, eclectic choice of topics and materials to cover, and use of objective tests containing spelling and grammatical errors. Some of these criticisms also appeared in individual comments on the student evaluation forms.

Plaintiff's other student evaluation evidence does not raise an issue of material fact regarding pretext. Plaintiff's higher ratings in upper-division courses do not rebut Defendant's statement that Plaintiff had difficulty teaching lower-division courses. Also, Plaintiff notes that other professors who received tenure had lower student evaluations. For example, in fall 1994, the same tenure committee that evaluated Plaintiff granted tenure to Spanish professor Phil Jaramillo, a Hispanic male. His student evaluations in 1994 were significantly below his earlier evaluations and the department average; however, his colleagues and supervisors believed he was an effective teacher. This evidence is consistent with the handbook and the Dean's evaluation form, which state that peer and

supervisor evaluations count more than student evaluations in determining teaching effectiveness. The other professors Plaintiff discusses are not comparable because they were either evaluated under the pre-1990 tenure procedures or are members of different schools.

Even assuming the tenure committee's recommendation to deny tenure was discriminatory, Plaintiff has not persuaded us that the ultimate decision was pretextual. Plaintiff presents no evidence that the final decision makers–Peer and Motz–had a discriminatory intent. Nevertheless, Plaintiff urges us to apply the "cat's paw" theory, under which Defendant would be liable for discrimination if the tenure committee's discriminatory recommendation tainted the ultimate outcome. See Lam v. University of Hawaii, 40 F.3d 1551, 1560 (9th Cir. 1994); Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990); Roebuck v. Drexel Univ., 852 F.2d 715, 727 (3d Cir. 1988). Defendant allegedly universally rubber-stamped the tenure committee's recommendations. Along these lines, Plaintiff offers Professor Crowder's comment that in his decades at the college, he had never seen a tenure applicant in the School of Arts and letters not receive tenure if the tenure committee voted to grant tenure.

To the contrary, the record shows that Frazee, Vice President Peer, President Fulkerson, and Interim President Motz independently reviewed Plaintiff's tenure application and evidence folder. In particular, Frazee

independently observed Plaintiff's Development of Civilization classes on two occasions, in fall 1993 and fall 1994. His notes and reports from those observations, describing his concerns about Plaintiff's teaching effectiveness, are included in the record. Crowder's comment regarding the universal approval of positive tenure recommendations is distinguishable from Plaintiff's situation because her case involved the denial of tenure. Plaintiff presents no evidence regarding a pattern of approving tenure denials. In addition, in fall 1993, Vice President Peer reversed the committee's and Dean's recommendations that Plaintiff not be retained. His refusal in spring 1994 to reverse the decision to not promote Plaintiff does not detract from this independence. The alleged discrimination at the committee level, if any, can not be attributed to Defendant. Accordingly, Plaintiff fails to raise a genuine issue of material fact regarding pretext.

AFFIRMED.

Entered for the Court,

Bobby R. Baldock
Circuit Judge