**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 31 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LINDA KERR,

      Plaintiff-Appellant,

v.

JAKE VALDEZ; GEORGE SHARPE;
JAMES GIPSON; JANET KING;
RON PRICE, Farmington School
Board Members; LARRY DEWEES,
Farmington High School Principal;
TOM SULLIVAN, Farmington
Municipal Schools Superintendent;
TOMMY BROWN, Farmington
Municipal Schools Assistant
Superintendent; JANEL RYAN,
Farmington Municipal Schools
Personnel Director; DAVE WILLDEN,
Farmington High School Assistant
Principal,

      Defendants-Appellees.

No.  01-2339
(D.C. No. CIV-00-502-JC/WWD)
(D. N.M.)

**ORDER AND JUDGMENT** *

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **O'BRIEN** and **PORFILIO** , Circuit Judges, and **KANE**,[**] Senior District Judge.

_____

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff sued defendants for various alleged violations of her constitutional rights to due process and equal protection under 42 U.S.C. § 1983; violations of her rights under 42 U.S.C. § 2000e, *et seq.* (Title VII) (discrimination on the basis of race–Native American and sex–female); along with state claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of privacy, intentional infliction of emotional distress, and prima facie tort. The foundation for these claims was the promotion of another teacher to the position of Vice Principal/Activities-Athletic Director of Farmington High School, a position plaintiff contended she had expressed interest in and was more qualified for.

After answering, defendants filed a motion to dismiss the complaint, which the district court granted in part and denied in part. Defendants then moved for

_____

[**]     The Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

summary judgment on the remaining claims. Utilizing the appropriate standard under Fed. R. Civ. P. 56(c), the court granted the motion upon determining that based on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," there was no genuine issue as to any material fact and defendants were entitled to judgment as a matter of law.

Our standard of review is de novo. *Ortiz v. Norton*, 254 F.3d 889, 893 (10th Cir. 2001). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Id.* (quoting Fed. R. Civ. P. 56(c)). A genuine issue of fact exists if "a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* We affirm.

Farmington High School experienced a vacancy for the position of athletic director after the end of school in 1999 and initially sought to fill it as a half-time job. Plaintiff, a teacher at the school, had considered the position, but was not interested when she learned it was only part time. The position was posted as half time until July, when it was converted to a full-time combination of vice principal and athletic/activities director. The full-time position was posted at the central personnel office, on the school's web page, and at the high school. It was also advertised in the Farmington Daily Times.

Plaintiff claims she was unaware of the change of the position to full time until August 5. On that date, she inquired of the principal, Larry DeWees,

whether the job was still open and was told that an offer had been made to a Mr. Cook. DeWees was waiting for a call from the personnel office to confirm whether the position had been accepted. Several days later, Cook declined the position. At that time, the position remained open and posted.

With school scheduled to begin on August 12 and no pending applications for the position, DeWees asked a department head, Jann Weems,[1] if she knew of anyone who might be a good candidate. Weems thought of David Willden and contacted him. On August 11, plaintiff learned from another teacher that the position was still available.[2] Plaintiff did not, however, contact the personnel office or DeWees that day to apply for the position. On the morning of August 12, Willden contacted DeWees to express interest in the position, and, following an interview and discussions with Willden's principal and others, Willden was hired. Plaintiff had intended to approach DeWees about the job on August 12

---

[1] At the end of the previous school year, plaintiff had told Weems she might apply for the athletic director position. The parties agree, however, that Weems likely forgot the conversation, but, in any event, did not intend to harm plaintiff or discriminate against her. Aplt. App. at 250. Also, despite plaintiff's occasional references to Weems as plaintiff's supervisor, Weems was not a supervisor, nor was she any type of agent for the school district. *Id.* at 238; Aplee. Supp. App. at 54-55.

[2] There is some confusion as to this date. In her complaint, plaintiff stated that she learned of the continued vacancy on August 9. Aplt. App. at 11. In her deposition and affidavit, however, she confirmed that she learned the job was open on August 11. The date is important because she made no attempt to convey her interest to either the personnel office or DeWees for at least twenty-four hours, *id.* at 248-49, during which time Willden was offered the position.

when she learned of Willden's acceptance of the position. Aplt. App. at 249. The school board approved Willden's hiring on August 26. Plaintiff filed a grievance, complaining that DeWees had failed to repost the position after Cook declined it; the grievance was denied. Defendants defended their actions based on the emergency hiring procedures discussed in a 1995 memorandum drafted by the then school district's director of personnel. This memorandum, referred to by the parties as the Kurley Memorandum, was promulgated to cover emergency situations such as sudden vacancies, as well as normal hiring practices.

**Issues on Appeal**

Because plaintiff has not appealed the earlier dismissal of several counts or the district court's determination not to exercise pendent jurisdiction over her state law claims, our review is limited to whether plaintiff set forth genuine issues of material fact to survive summary judgment on her discrimination claim, which is based on the theories of disparate treatment and disparate impact.

Disparate treatment and disparate impact are alternative theories on which a right to relief under Title VII can be established. *Williams v. Colo. Springs, Colo.*, 641 F.2d 835, 839 (10th Cir. 1981). We apply disparate treatment analysis to claims alleging an employer treated some people less favorably than others based on race, color, religion, sex, or national origin. *Id.* Disparate impact analysis, on the other hand, is used for claims which include employment

-5-

practices facially neutral in their treatment of different groups, but which in fact fall more harshly on one group than another and cannot be justified by business necessity. *Id.*

**Disparate Treatment**

Plaintiff characterizes her cause as a failure to promote claim. To establish a prima facie case of failure to promote, she needed to show (1) membership in a minority group; (2) qualification for the promotion; (3) her nonpromotion; and (4) continued vacancy of the position or promotion or appointment of nonminority to the position. *See Reynolds v. Sch. Dist. No. 1,* 69 F.3d 1523, 1534 (10th Cir. 1995); *see also Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226-29 (10th Cir. 2000) (explaining that under *McDonnell* [*Douglas Corp. v. Green*, 411 U.S. 792 (1973)] criteria, plaintiff need not show person hired to fill position was outside protected class). On appeal, defendants argue that plaintiff failed to make a prima facie case because she did not apply for the position in question and had even expressed a disinterest in coaching. *See Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir. 2001) (holding that a plaintiff must show she applied for–or at least sought–position at issue); *Randle v. City of Aurora*, 69 F.3d 441, 451 n.13 (10th Cir. 1995) (prima facie case includes showing plaintiff applied for and was qualified for available position). Plaintiff counters with her expressed "interest" in the position when she contacted DeWees on August 5, only to learn that an

offer had been made to Cook, and her claim that "despite her qualifications, she was not allowed to apply for the position." Aplt. Br. at 10; *see also id.* at 5-6. [3]

A plaintiff can prove intentional discrimination either directly, by showing that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999) (quotations omitted). Direct evidence is that "which if believed, proves the existence of a fact in issue without inference or presumption." *Id.* (further quotation omitted). Contrary to plaintiff's arguments, she did not furnish direct evidence of intentional discrimination. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1315 (10th Cir. 1999) ("Because disparate treatment is a form of intentional discrimination, [] plaintiff must prove that her employer acted with a discriminatory intent or motive."). The use of the emergency hiring procedure itself simply does not constitute direct evidence of discrimination. [4]

---

[3] In her complaint plaintiff acknowledged that the position remained posted after she talked to DeWees on August 5. Aplt. App. at 10. In her affidavit, she stated she "did not apply for [the] position which [she] believed was filled based on [her] conversation with DeWees." *Id*. at 209. More importantly, however, in her deposition, she stated she knew of no actions taken by anyone in the school district to deliberately preclude her from applying for the job. *Id.* at 251.

[4] To the extent that plaintiff relies on *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990) as authority for this proposition, we disagree with her interpretation of that case.

In their motion for summary judgment, defendants assumed for purposes of the motion that plaintiff had established a prima facie case. Aplee. Supp. App. at 2, 16. The district court addressed the parties' arguments on that basis. Aplt. App. at 89-90. Because defendants did not argue that plaintiff had failed to make a prima facie case, the district court did not err in assuming such a case had been established and in proceeding to defendants' burden to show a nondiscriminatory reason for its hiring decision. We likewise assume, without deciding, that plaintiff established a prima facie case of discrimination. *See Shorter*, 188 F.3d at 1208.

Once a prima facie case is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 752 (10th Cir. 2000). The plaintiff then has the ultimate burden of showing that defendants' reason is "a pretext for unlawful discrimination." *Id.* at 752-53. Defendants' facially nondiscriminatory reason–business necessity–was based on the emergency situation the school was facing. After advertising the position for at least two months, defendants needed to fill it immediately because school was about to start. For her evidence of pretext, i.e., the unworthiness of belief of defendants' reason, plaintiff argues that her previously expressed interest required defendants to consider her once the position reopened after Cook declined it, that defendants improperly relied on the

emergency hiring procedure in hiring Willden, and that her statistical data shows discriminatory hiring practices by defendants. As she correctly acknowledges, for her disparate treatment claim to reach a jury, "she must show that a reasonable juror could find intentional discrimination." Aplt. Br. at 10.

First, plaintiff argues that defendants could not establish a facially nondiscriminatory reason for their employment decision. Aplt. Br. at 11. We disagree. The facially nondiscriminatory reason was the immediate need to fill the position that had been open and advertised for two months without any applicants until Cook, who subsequently withdrew.

Next, plaintiff argues that there was no emergency because the school schedule had been previously planned and because DeWees had stated that if the position was not filled, the school administrators would divide up the responsibilities. This argument is unavailing for several reasons. First, plaintiff conceded that there were numerous activities and athletic events or scheduled practices either underway or about to begin. Aplt. App. at 255-56. Second, she offered no evidence, other than her own opinion, that no emergency existed. Finally, she did not dispute defendants' belief that an emergency existed. *See id.* at 279 (testimony of school superintendent that conditions justified emergency hiring process); *id.* at 331 (testimony of personnel director describing numerous activities needing approval of athletic director); *id.* at 307 (perception of

department head that emergency existed); Aplee. Supp. App. at 32 (testimony of school principal that "[e]mergency . . . is that school started"). The relevant inquiry is not whether the employer's reasons for its employment decision "were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington*, 186 F.3d at 1318; *see also Reynolds,* 69 F.3d at 1535 ("Pretext requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason."). Plaintiff's argument that no emergency existed fails to establish a showing of pretext.

Plaintiff next claims that "Willden was not the first person to present himself for the [athletic director] job after it was declined by Mr. Cook" and that she "tried to obtain the position." Aplt. Br. at 14. The district court held that plaintiff's previous interest in the position and any duty the district might have had to consider all interested persons helped establish a prima facie case, but did not explain why the district's urgent need to fill the position constituted a required pretext for intentional discrimination. Aplt. App. at 90-91. We agree; plaintiff's arguments are not directed to the required pretext showing.

Plaintiff also argues that no other potential applicant was similarly situated to her, stating that she was the only person "who expressed interest after the position was re-opened and who should have been given the opportunity to

apply." Aplt. Br. at 15. She also contends that she was the only person to apply for the position "after it was re-opened when Mr. Cook declined the position." *Id.* at 16. This argument ignores the facts that Willden sought the position by approaching DeWees on August 12 and that plaintiff's August 5 conversation with DeWees came *before* Cook declined the position, not after. *See* Aplt. App. at 245. Her citation to the school superintendent's testimony for her statement that when she "inquired about applying for the position[, she] was informed that the job was filled," Aplt. Br. at 16, is also contrary to the record. The superintendent testified that the position had been offered to someone and that it would have been appropriate for DeWees to say so. *See* Aplt. App. at 280-82. The superintendent further testified that the district had no obligation to follow up with a person inquiring about the job absent a formal application. *Id.* at 282. As previously noted, plaintiff had not submitted a formal application prior to Willden's hiring and, by her own admission, did not do so until September 14, 1999. *Id.* at 253.

Plaintiff also claims that disturbing procedural irregularities attended the use of the emergency hiring procedures and that when combined with her statistical evidence, these irregularities show pretext. Again, we disagree. To the extent that the district's emergency hiring procedure constituted an irregularity at all, its invocation obviously disadvantaged all potential applicants "rather than

just members of a protected class," and therefore did not support plaintiff's claim of discrimination. *See Kendrick*, 220 F.3d at 1230 n.9. Moreover, because the district believed it was following its own procedures, even if the failure to reannounce the position "was a mistake, it was not pretextual." *Randle*, 69 F.3d at 455. Finally, to the extent that plaintiff relied on statistical evidence to support her disparate treatment claim, we agree with the district court that the evidence did not relate to the district's intention in making its hiring decision. *See Bullington*, 186 F.3d at 1319. In sum, because "plaintiff failed to produce proof of circumstances giving rise to an inference of unlawful determination," the district court properly granted summary judgment on plaintiff's disparate treatment claim. *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1183 (10th Cir. 2002).

**Disparate Impact**

Under a disparate impact theory, a plaintiff can establish a prima facie case of discrimination by showing "that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir. 1991) (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)). A disparate impact claim involves practices fair in form, but discriminatory in practice and is different from a disparate treatment claim because it does not require a showing of

discriminatory intent. *Bullington*, 186 F.3d at 1312. A plaintiff "must not merely show circumstances raising an inference of discriminatory impact but must demonstrate the discriminatory impact at issue." *Id.* Here, we agree with the district court that this evidence, in the form of an affidavit by a state department of labor economist, simply failed to relate the lack of Native American administrators in the Farmington School District to the use of defendants' emergency hiring procedure. We also agree that this statistical information was merely a general assault on the racial composition of the work force and thus was inadequate to support a case of disparate impact. *See Wards Cove Packing Co.*, 490 U.S. at 656-57 ("Just as an employer cannot escape liability under Title VII by demonstrating that, 'at the bottom line,' his work force is racially balanced. . . , a Title VII plaintiff does not make out a cause of disparate impact simply by showing that, 'at the bottom line,' there is racial *imbalance* in the work force.") (quoting *Connecticut v. Teal*, 457 U.S. 440, 450 (1982)).

In her brief, plaintiff argues that the economist's affidavit "established that there are no Native American administrators, they are unable to apply for the position, and the [Kurley Memorandum] allowed the [school district] unbridled discretion to select their friends and relatives to a higher paying, higher level position." Aplt. Br. at 25-26. We agree that the affidavit states that there are no Native American administrators. However, the affiant made no such statement

that Native Americans are unable to apply for administrative positions. Aplt App. at 213-14. Nor is there anything remotely present in the Kurley Memorandum, *id.* at 103, to support plaintiff's argument that the school district had unbridled authority to hire "friends and relatives." In sum, plaintiff's evidence fails to demonstrate that the emergency hiring procedure had a disparate impact on Native Americans. Had plaintiff applied for the position on August 11 when she learned it was still open, she too could have been hired under the emergency policy.

For these and the reasons stated by the district court in its May 18, 2000 order granting summary judgment, the judgment of the United States District Court for the District of New Mexico is AFFIRMED. Plaintiff's motion to strike defendants' supplemental appendix is DENIED.

Entered for the Court

John C. Porfilio
Circuit Judge