Johnny **PEPPERS**, Plaintiff,

v.

**U.S. CENTRAL CREDIT UNION**, Defendant.

**CIVIL ACTION No. 00–2497–CM.**

United States District Court, D. Kansas.

April 17, 2002.

David A. Lunceford, Blue Springs, MO, John C. Bragg, Blue Springs, MO, for plaintiff.

Tammy L. Horn, Stinson Morrison Hecker, LLP, Leawood, KS, Sara E. Welch, Stinson, Morrison Heckler, LLP, Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff Johnny Peppers filed suit against defendant U.S. Central Credit Union alleging he was subjected to race discrimination in violation of 42 U.S.C. § 1981. Pending before the court is defendant U.S. Central Credit Union's Motion for Summary Judgment (Doc. 41). As set forth in detail below, defendant's motion for summary judgment is granted.

### I. Facts

In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff, the non-moving party. Fed.R.Civ.P. 56.[1]

---

1. Where plaintiff has failed to respond to defendant's statements of uncontroverted fact, the court construes those facts as admitted for purposes of the pending motion. *See* D. Kan. R. 56.1(a) ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."). In addition, the court notes that many of the "Material Facts to Which Plaintiff Contends a Genuine Issue Exists" contain improper assertions of fact because they are expressions of subjective opinion that do not meet the requirements of

### A. Plaintiff's Employment History with Defendant

Plaintiff is an African–American male and a former employee of U.S. Central. Defendant is a corporate credit union operating on a not-for-profit basis. Plaintiff began his employment with defendant in January 1996, working as a Treasury Manager and earning an annual salary of $50,000. In September 1996, plaintiff was promoted to Manager of the then newly-formed Information Systems and Payment Services department (hereinafter the "ISPS department"). In this new position, plaintiff reported to Ronn Hennessy, a Caucasian male. In October 1996, Mr. Hennessy demoted plaintiff from his managerial position and assigned him to the non-managerial position of Senior Payment Operations Representative in the ISPS department.

In September 1998, plaintiff moved to a Technical Support position in the ISPS department. In this new position, plaintiff reported to Becky Dunster, a Caucasian female. In June 1999, plaintiff was promoted[2] to Support Coordinator, but continued to report to Ms. Dunster in the ISPS department. As the Support Coordinator, plaintiff had supervisory responsibilities over the ACCESS product support area. However, in early 2000, plaintiff's supervisory responsibilities were removed at his request, with no modification of his work title or deduction to his salary.

Plaintiff resigned from defendant's operations effective May 31, 2000.

### B. Ms. Dunster's Assignment of Additional Work to Plaintiff During Her Maternity Leave

Plaintiff's manager, Ms. Dunster, took maternity leave from work between February and April 1999. During her leave, Ms. Dunster assigned most of her regular work responsibilities to other employees, including employees who reported to her. For example, Ms. Dunster assigned to plaintiff the day-to-day supervisory responsibilities for ACCESS product support services. However, plaintiff was not provided with the necessary supervisory authority to carry out the job assigned to him and he was not assigned a commensurate supervisory title during Ms. Dunster's leave. Plaintiff asserts that it was because of his race that Ms. Dunster assigned him additional responsibilities during her leave.

However, Ms. Cynthia Simpson, the Financial Operations Supervisor, and Ms. Kim Gorsage–Frazier, the Support Supervisor over defendant's CCUN product support area, also were assigned additional responsibilities during Ms. Dunster's leave. Similar to plaintiff, neither Ms. Simpson nor Ms. Gorsage–Frazier was given a change in title during Ms. Dunster's absence to reflect her increased responsibilities.

D. Kan. R. 56.1(d), which notes "[a]ll facts on which a motion or opposition is based shall be presented by affidavit, declaration under penalty of perjury … made on personal knowledge and by a person competent to testify to the facts stated which shall be admissible in evidence." The court will not consider these improper assertions in its examination of the pending summary judgment motion. Finally, the court has incorporated the additional statements set forth in "Plaintiff's Statement of Additional Undisputed Material Facts" to the extent they are material and supported by the record and has excluded them to the extent they do not comply with summary judgment standards. Fed.R.Civ.P. 56; D. Kan. R. 56.1.

2. Although plaintiff attempts to controvert defendant's assertion that plaintiff's move to the Support Coordinator position was a promotion, the portion of the record cited in support of this "controversion" does not support plaintiff's assertion. As such, the court considers defendant's statement of fact as undisputed. D. Kan. R. 56.1.

### C. Ms. Simpson's Promotion in June 1999

Effective June 1999, Ms. Simpson was promoted to Manager of Information Systems and Payment Services Operations (hereinafter the "June 1999 position"). Ms. Dunster and her manager, Ross Sougey, made the decision to give Ms. Simpson the managerial title. Ms. Simpson had been assigned to the APEX Core project team as an added responsibility during Ms. Dunster's maternity leave. Ms. Simpson was promoted, primarily because her responsibilities in her prior capacity as a Financial Operations Supervisor increased with her assignment to the APEX Core project team and because she demonstrated during the six months prior to her promotion that she possessed leadership skills of a manager and that she could perform management level work.

The management position into which Ms. Simpson was promoted was not posted. Instead, the management title was given to Ms. Simpson primarily to recognize the increased responsibilities she had taken on in her previous capacity as a supervisor.[3]/[4]

Plaintiff testified that, at the time of Ms. Simpson's promotion, he "was knowledgeable" of the defendant's products. (Pl.'s Opp'n at 9). Therefore, plaintiff asserts that he and Ms. Simpson were equally qualified to be the Manager of Information Systems and Payment Services Operations, and that he was not given the June 1999 position because he is African–American and Ms. Simpson is Caucasian.

### D. Plaintiff's Promotion Following His Complaint Regarding Ms. Simpson's Promotion

The announcement of Ms. Simpson's promotion in the summer of 1999 caused plaintiff to ask his manager, Ms. Dunster, whether his race was the reason he had been passed over for that promotional opportunity. Ms. Dunster told plaintiff it was not due to his race that he had not yet been promoted to a supervisory position. Instead, Ms. Dunster told him that she

---

**3.** Plaintiff asserts that Ms. Simpson had no managerial experience at the time of her promotion; however, the testimony he sets forth to support this fact is lacking in foundation. Plaintiff testified during his deposition that Ms. Simpson had no managerial experience. However, there is no foundational support for the admission of this evidence, as it is not clear plaintiff has personal knowledge of Ms. Simpson's job responsibilities or experience before her promotion. As such, it is improper for consideration on summary judgment. *See* D. Kan. R. 56.1 (requiring that all "facts on which a motion or opposition is based shall be presented by affidavit, declaration ... [or] depositions ... made on personal knowledge and by a person competent to testify to the facts stated which shall be admissible in evidence"). Moreover, plaintiff's perception of Ms. Simpson's qualifications is immaterial to the issues before this court. It is the decisionmaker's perspective of the employee's performance which is relevant here. *See Shorter v.*

*ICG Holdings, Inc.,* 188 F.3d 1204, 1209 (10th Cir.1999).

**4.** Plaintiff also asserts that, at the time of Ms. Simpson's promotion, she was moved from "the financial side" of defendant's business to "the product side" of the business and that she "did not know about the defendant's products and would need to learn all about the [d]efendant's products that the [p]laintiff and the other employees on the product side, supported." (Pl.'s Opp'n at 9). However, the court finds no foundational support for the admission of this evidence, as it is not clear that plaintiff has personal knowledge of Ms. Simpson's job responsibilities or experience before her promotion. D. Kan. R. 56.1. Moreover, plaintiff's perception of Ms. Simpson's qualifications and knowledge is not relevant to the issues before the court. Instead, it is the decisionmaker's perspective of Ms. Simpson's performance and promotion criteria which is relevant here. *See Shorter,* 188 F.3d at 1209.

believed he needed to improve on certain skills.

At the time plaintiff complained to Ms. Dunster about Ms. Simpson's promotion, Ms. Dunster had three different functional areas reporting to her: (1) payment operations; (2) support for the main-frame based CCUN product; and (3) support for the PC-based ACCESS product. At this time, Ms. Simpson had just been promoted to manage the payment operations area; Ms. Gorsage–Frazier was the supervisor over the CCUN support area, and no one was in the supervisory position over the ACCESS support area, where plaintiff worked.

Following plaintiff's complaint (and on the same day plaintiff made the complaint), Ms. Dunster and her manager Mr. Sougey agreed to promote plaintiff to the position of supervisor over the ACCESS support area. Before hearing plaintiff's complaint, Ms. Dunster was aware of plaintiff's desire to return to a management position and had been working toward promoting him to the supervisory position over ACCESS later in 1999. Ms. Dunster had not previously promoted plaintiff to the supervisory position over ACCESS because she perceived that he needed to improve his organizational, time management, and writing skills. Mr. Hennessy, plaintiff's and Ms. Dunster's immediate supervisor from 1996–1998, testified that plaintiff "had enough knowledge on the payment side of operations to have been considered to be qualified as a supervisor on that part." (Hennessy Dep. at 84:24–85:3). However, Mr. Hennessy had no personal knowledge of plaintiff's or Ms. Simpson's qualifications for the June 1999 position in 1999.

Ms. Dunster tried to give plaintiff projects that would enable him to demonstrate improvement in his organizational, time management, and writing skills, such that he could succeed in a leadership role.

Ms. Dunster believed these three skills were necessary to be successful in a management role. Ms. Dunster delayed posting the open position of supervisor over the ACCESS support area because she wanted to give plaintiff the opportunity to develop his leadership skills so that he would be prepared for the supervisory role in the ACCESS area when he assumed it later in 1999.

Prompted by plaintiff's complaint about Ms. Simpson's promotion, Ms. Dunster accelerated her planned timetable for promoting plaintiff by agreeing to offer him the position of Support Supervisor over ACCESS in June 1999. In addition, at the time of his complaint, Ms. Dunster apologized to plaintiff for not giving him "the opportunity to have taken some of the management positions." (Pl.'s Dep. at 86:23–25). Ms. Dunster further noted that she "was not prejudiced and that there was no reason that [plaintiff] had not been promoted." (*Id.* at 86:25–87:2).

Plaintiff was not satisfied with the title of Support Supervisor initially offered to him. Plaintiff chose the title of Support Coordinator instead, although the change in title did not change the responsibility he was assigned—to supervise the ACCESS support area. As a result of his promotion, plaintiff's annual salary was increased by 6%, from $50,000 to $53,000. Plaintiff, as Support Coordinator over ACCESS, and Ms. Gorsage–Frazier, as Support Supervisor over CCUN, had identical job descriptions. Ms. Gorsage–Frazier earned approximately $10,000 less in her supervisory role, despite the parallel job description with plaintiff's new position. Ms. Simpson earned approximately $5,000 less than plaintiff in her new position in her role as Manager of Information Systems and Payment Services Operations.

During his deposition, plaintiff testified that he was satisfied with management's

response to his complaint about Ms. Simpson's promotion because it gave him an opportunity to get back into management. However, plaintiff also testified at his deposition that he was not satisfied with management's response. Specifically, plaintiff testified that

"Because I was over the ACCESS product and [that product was] sunset dated, I figured it was just a—a carrot that they dangled to appease me at the time, but knowing at the end of '99 [the ACCESS product] was going away. I didn't feel like it was a promotion. In fact, I felt like all the positions available for promotion was (sic) just already taken."

(Pl.'s Dep. at 448:5–12). However, the ACCESS product had not been terminated, and was still in place as one of defendant's products when plaintiff left defendant's employment in May 2000. Moreover, in May 2000, defendant did not eliminate plaintiff's position as Support Coordinator for ACCESS, but instead filled that position with another individual.

Plaintiff testified that by early 2000, plaintiff's performance in his role as Support Coordinator had slipped to the point that he had become the kind of employee he would not have wanted if he were an employer. (*Id.* at 176:4–10). In March 2000, Ms. Dunster removed plaintiff's supervisory responsibilities at his request because he "couldn't take it anymore." (*Id.* at 187:6–7). Although plaintiff no longer had supervisory responsibilities by March 2000, his Support Coordinator title and $53,000 annual salary remained the same.

### E. Plaintiff's Concern Regarding Isolation by Upper Management

At times during his employment with defendant, plaintiff sensed that management would avoid him by not speaking to him and by turning and walking away when he entered a room or walked down a hallway. Plaintiff indicated that he could not identify anyone in particular who engaged in this behavior, other than Ross Sougey and Jay Mast, both Caucasian members of defendant's upper management.

Plaintiff asserts that members of upper management ignored him and did not say "hello" to him for two reasons: (1) because he is African–American; and (2) because they were embarrassed that they had allowed management beneath them to overlook plaintiff for promotional opportunities. However, Teddi Scott, an African–American employee who reported to plaintiff when he was a Support Coordinator, perceived that Mr. Sougey was "mean" and "rude to everybody," regardless of the color of their skin.

### F. Ms. Dunster's Lack of Support for Plaintiff on the Y2k Project

In approximately 1999, Ms. Dunster assigned to plaintiff and his staff the task of making the product support for ACCESS Y2k-ready. This assignment included researching, testing, and performing documentation, as well as performing regular support operations for the product. Plaintiff contends that he did not receive sufficient support for this assignment. According to plaintiff, this assignment, without the sufficient support, created an unbearable work load for plaintiff to accomplish. Plaintiff does not assert that Ms. Dunster was racially motivated in assigning him the additional Y2k-related responsibilities without sufficient support. Instead, plaintiff asserts that Ms. Dunster assigned the Y2k-project to him because he was the only person in the department qualified to accomplish the task. Ms. Dunster also assigned additional Y2k-related responsibilities to Ms. Gorsage–Frazier and Ms. Simpson. However, plaintiff observed that

Ms. Gorsage–Frazier and Ms. Simpson received support to perform their Y2k tasks, but cannot specify what these individuals' duties were or the kind of support they received.

### G. Plaintiff's Assessment of Ms. Dunster as His Manager

In a written response to his 1997 performance evaluation, completed by Ms. Dunster in early 1998, plaintiff made a favorable comment about Ms. Dunster in an effort to "pat her on the back." In a written response to his 1998 performance evaluation, completed by Ms. Dunster in early 1999, plaintiff again made a favorable comment about Ms. Dunster in an effort to "pat her on the back" for the way in which she managed him. Similarly, in a written response to his 1999 performance evaluation, completed by Ms. Dunster in early 2000, plaintiff wrote that he was "very pleased and thankful for the support shown to him by management at U.S. Central." (Pl.'s Dep. at 182:3–5). Plaintiff also wrote, "I don't know how to put in words to express how Becky Dunster has made me feel and the encouragement she provided to help me overcome my state of being. I can only say that U.S. Central needs more managers like her." (*Id.* at 182:7–11). Plaintiff does not believe that Ms. Dunster is racist, but rather believes she is a good person. It is uncontested that Ms. Dunster never made any racist comments.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.

1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

Plaintiff claims that defendant discriminated against him by adversely treating him with respect to the terms and conditions of his employment. Specifically, plaintiff alleges that he was subjected to discrimination on the basis of his race in violation of § 1981 when he was: (1) denied two separate promotions in March and April of 1998; (2) demoted from a managerial to a non-managerial position in October 1996; (3) mistreated by a former manager throughout 1996 and 1997; (4) unfairly assigned to an obsolete banking service product in 1996 by Mr. Hennessy; (5) denied a promotion to the Manager of Information Systems and Payment Services Operations position in June 1999 (the "June 1999 position"); (6) unfairly assigned supervisory responsibilities for the ACCESS support area without a commensurate supervisory title during his manager's maternity leave in early 1999; (7) unfairly assigned Y2k-related responsibilities without sufficient support in 1999; (8) shunned and ignored by upper management who would not initiate conversation with him; and (9) denied training in other products.

### A. Timeliness of Plaintiff's Claims[5]

Defendant asserts that plaintiff's claims of race discrimination involving alleged discriminatory actions occurring prior to October 31, 1998 are barred by the applicable statute of limitations. In his opposition motion, plaintiff does not refute defendant's argument regarding these pre-October 31, 1998 claims. As set forth below, the court finds plaintiff's pre-October 31, 1998 claims are time-barred.

■ The court applies the two-year statute of limitation set forth in Kan. Stat. Ann. § 60–513(a)(4) to plaintiff's claims of race discrimination under § 1981, as amended by 42 U.S.C. § 1981a. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (finding the forum state's statute of limitations for personal injury actions provides appropriate limitations period for claims under § 1981); *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1110–11 (10th

---

**5.** The following facts are relevant to plaintiff's untimely claims. Mr. Hennessy demoted plaintiff in October 1996 from the position of Manager of Information Systems and Payment Services to the non-managerial position of Senior Payment Operations Representative. In 1996, Mr. Hennessy also assigned plaintiff to work on a product called ACCESS, a PC-based product.

Plaintiff asserts that Mr. Hennessy subjected him to the "demotion" and to the following treatment because of plaintiff's race. Specifically, in 1996 Mr. Hennessy told plaintiff that he was required to report to work before Mr. Hennessy arrived and should never leave work before Mr. Hennessy left. In late 1996 or early 1997, Mr. Hennessy informed plaintiff that he would never get a raise. In early 1997, Mr. Hennessy required plaintiff to cover the phones while everyone else in the department attended meetings. Also in early 1997, Mr. Hennessy refused to allow plaintiff to view or work on products other than ACCESS. Finally, Mr. Hennessy informed plaintiff in 1996 that his employment would be terminated when the ACCESS product was terminated.

In March 1998, Ms. Gorsage–Frazier was promoted to Support Supervisor over defendant's CCUN product support area. In April 1998, Ms. Simpson was hired by defendant as a Financial Operations Supervisor. Both Ms. Gorsage–Frazier and Ms. Simpson are Caucasian females. Plaintiff asserts that defendant denied him the supervisory positions given to Ms. Gorsage–Frazier and Ms. Simpson because of his race.

Cir.1998) (applying Colorado's two-year statute of limitations where claim stemmed from amended version of § 1981); *Hall v. FlightSafety Int'l, Inc.*, 106 F.Supp.2d 1171, 1184 (D.Kan.2000) (applying Kan. Stat. Ann. § 60–513(a)(4)'s two year statute of limitation to plaintiff's § 1981 claim).

In this case, plaintiff asserts, in part, that defendant engaged in discriminatory actions in 1996, 1997, and in March and April of 1998. Plaintiff filed this lawsuit on October 31, 2000—more than two years from the date of the alleged discriminatory acts in 1996, 1997, and early 1998. Accordingly, plaintiff's § 1981 claim with respect to the allegations in 1996, 1997, and early 1998 is barred by the two-year statute of limitations. Specifically, the statute of limitations bars plaintiff's § 1981 claim to the extent it is premised upon: (1) plaintiff's race discrimination claims based on the denial of two separate promotions in March and April of 1998; (2) the demotion from a managerial to a non-managerial position in October 1996; (3) the alleged mistreatment by a former manager throughout 1996 and 1997; and (4) the unfair assignment to an obsolete banking service product in 1996. Judgment is granted to defendant on plaintiff's § 1981 claim to the extent it is premised upon these untimely allegations. Defendant's motion is granted on this basis.

### B. Failure to Promote Claim

Defendant next asserts that defendant's decision not to promote him into the June 1999 position was discriminatory and in violation of § 1981. Plaintiff alleges that defendant's decision to deny him the June 1999 position and instead to award it to Ms. Simpson was impermissibly based on his African–American race. As set forth below, the court finds plaintiff has failed to set forth evidence of pretext.

### 1. *McDonnell Douglas* Framework

The court analyzes plaintiff's failure to promote claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n. 3 (10th Cir.1997) (applying *McDonnell Douglas* standard to § 1981 claims). In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each element of his prima facie case of discrimination. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995).

Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *EEOC v. Flasher Co.*, 986 F.2d 1312, 1317–19 (10th Cir.1992)). If the defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—*i.e.*, unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir.1994)).

### 2. Prima Facie Case and Legitimate Non Discriminatory Reason

For purposes of summary judgment, defendant concedes plaintiff can state a prima facie case of discrimination based on a failure to promote. However, defendant argues that plaintiff is unable to come forth with evidence sufficient to show defendant's proffered reason for its decision not to promote plaintiff to the June 1999 position is pretextual. The court agrees.

Defendant asserts that it chose to promote Ms. Simpson into the June 1999 position, rather than plaintiff, because "her

responsibilities in her previous capacity as a supervisor had increased with her assignment to the new APEX Core project team and also because she had demonstrated during the previous six months in her role as a supervisor that she possessed leadership skills of a manager and could perform management-level work." (Def.'s Mem. at 18–19). Moreover, Ms. Simpson's management position was not posted, as no new position was created. Instead, "a management title was give to [Ms.] Simpson primarily to recognize the increased responsibilities she had taken on in her previous capacity as a supervisor." (*Id.* at 19 n. 7).

### 3. Plaintiff's Pretext Burden

■ To establish pretext, plaintiff must show either that "a discriminatory reason more likely motivated the employer ... or ... that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff may accomplish this by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir.1996)).

■ In order to meet his burden at the summary judgment stage, plaintiff need not come forward with evidence that defendant acted with an illegal discriminatory motive. *Randle*, 69 F.3d at 451–52. Rather, for purposes of summary judgment, plaintiff need only come forward with evidence that defendant's proffered non-discriminatory reason regarding the June 1999 position is unworthy of credence. *Id.* at 451–53.

With these principles in mind, the court concludes that plaintiff has not come forward with sufficient evidence to survive summary judgment. Addressing plaintiff's arguments regarding pretext, as set forth below, the court finds there is no evidence in the record from which a reasonable jury could conclude that defendant's proffered reason is unworthy of belief.

### a. Failure to Post

■ Plaintiff asserts that defendant's failure to post the June 1999 position is evidence of pretext. It is undisputed that the new management position was not posted at the time Ms. Simpson was promoted. Instead, the management title was given to Ms. Simpson primarily to recognize the increased responsibilities she had taken on in her previous capacity as a supervisor. Defendant asserts that the position was not posted because there was no job vacancy or opening to post.

Plaintiff argues that defendant "did not follow its own policies and procedures in posting the job vacancy, despite it being the normal practice and procedure to post such jobs." (Pl.'s Opp'n at 16). However, plaintiff's factual basis for this assertion is insufficient to allow its consideration by the court on summary judgment. Plaintiff argues that the testimony of his former supervisor, Mr. Hennessy, supports this pretext argument. However, Mr. Hennessy's testimony was that it was his understanding generally that job openings in the department at issue were posted. There is no evidence Mr. Hennessy had personal knowledge of the practice of posting job openings in June 1999. In 1998, Mr. Hennessy changed positions and no longer retained responsibilities for the ISPS department and in May 1999, Mr. Hennessy left defendant's employment. Therefore, the court finds Mr. Hennessy's testimony on this matter lacks the requisite foundation

and is an improper fact for the court to consider on summary judgment. *See* D. Kan. 56.1 (noting factual assertions must be based on personal knowledge).

Moreover, plaintiff sets forth no evidence that other positions in the ISPS department were posted on a consistent basis or that it was against company policy to fail to post the June 1999 position given to Ms. Simpson. Accordingly, the court finds that no reasonable juror could conclude, based upon the admissible evidence set forth on the record, that defendant's failure to post the June 1999 position was pretextual or that defendant's proffered explanation for the failure to post is unworthy of credence.

### b. Comparative Qualifications of Plaintiff and Ms. Simpson

 Plaintiff next argues that he was qualified for the position and defendant's failure to consider him, despite his qualifications, is evidence of pretext. However, plaintiff's subjective belief about his own qualifications does not raise a question of fact regarding the alleged pretextual nature of defendant's proffered reason for not promoting plaintiff into the June 1999 position. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988) ("It is the perception of the decision maker which is relevant [to determining pretext], not plaintiff's perception of [him]self.").

Moreover, even if the court assumes plaintiff was qualified for the June 1999 position, it is uncontested that Ms. Simpson was also qualified for the June 1999 position. The fact that plaintiff is also qualified does not raise an issue of fact regarding pretext. An employer does not violate the law by choosing among qualified candidates so long as the decision is not based on unlawful criteria. *Ratts v. Bd. of County Comm'rs, Harvey County, Kan.*, 141 F.Supp.2d 1289, 1308 (D.Kan. 2001) (citing *Burdine*, 450 U.S. at 259, 101

S.Ct. 1089). Generally, an assertion that plaintiff is equally or more qualified than the person promoted is insufficient to prove pretext. *Branson*, 853 F.2d at 772. To be evidence of pretext, the "disparity in qualifications must be 'overwhelming.'" *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir.1999) (quoting *Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 247 (10th Cir.1993)).

Plaintiff has not set forth evidence to show he was "overwhelmingly" more qualified than Ms. Simpson in June 1999. Instead, the record shows that at the time the June 1999 position was created, Ms. Simpson had been demonstrating solid managerial skills. In contrast, the uncontested record shows that Ms. Dunster, plaintiff's manager, believed plaintiff needed to improve on three important skills to be prepared for a management position.

In addition, there is no evidence that defendant's decision not to consider anyone other than Ms. Simpson for the June 1999 position was pretextual. Absent such evidence, it is not this court's role to determine whether an employer acted prudently in its promotional decisions. *See Branson*, 853 F.2d at 772 (assertion that plaintiff was equally or more qualified than person retained is insufficient to prove pretext). Even if plaintiff is able to establish defendant exercised poor business judgment in failing to consider other candidates for the June 1999 position, such evidence does not itself establish pretext. *Id.*

Given the record, the court finds no reasonable juror could conclude that plaintiff's qualifications "overwhelmingly" establish that he was more suited for the June 1999 position than Ms. Simpson or that defendant's proffered explanation for its decision to hire Ms. Simpson into the June 1999 position is unworthy of credence.

#### c. Defendant's Reaction to Plaintiff's Complaints

■ Plaintiff next asserts that defendant's reaction to his complaint about Ms. Simpson's advancement into the June 1999 position establishes pretext. Specifically, plaintiff asserts that there could be no "logical" explanation other than race discrimination for why he was promoted to Support Coordinator and given a $3,000 raise following his complaint. The court disagrees.

It is undisputed that Ms. Dunster was aware of plaintiff's desire to return to management prior to his complaint. In addition, it is undisputed that Ms. Dunster had been working toward promoting plaintiff to the supervisory position over the ACCESS support department later in 1999. Ms. Dunster was waiting to allow plaintiff time and opportunity to demonstrate an improvement in his writing, organizational and time management skills. Plaintiff has presented no evidence to allow the inference that defendant's decision to accelerate plaintiff's return to management was discriminatory. The court finds, given the evidence in the record, that no reasonable juror could conclude from the timing of plaintiff's promotion that defendant's proffered explanation for why it decided to promote plaintiff and to give him a $3,000 raise following his complaint is unworthy of credence.

#### d. Differing Promotional Requirements

Finally, plaintiff argues that the evidence shows he was held to a different requirement for promotion than Ms. Simpson due to his race. Specifically, plaintiff argues that although defendant required him to know the products in order to be considered for a management position, defendant waived this requirement for Ms. Simpson. Although plaintiff asserted in his additional facts that Ms. Simpson did not have knowledge of defendant's products, the court has noted this testimony lacks foundation, and therefore, it is inadmissible for consideration on summary judgment. (*Supra* at 4 n. 4). Absent plaintiff's inadmissible testimony, plaintiff has no evidence to demonstrate that defendant applied different promotional criteria to Ms. Simpson than it applied to him. The court finds no showing of pretext.

#### e. Conclusion

Accordingly, the court finds there is insufficient evidence in the record from which a reasonable jury could conclude that defendant's proffered reason for not promoting plaintiff in June 1999 is pretextual. Absent a showing of pretext, plaintiff is unable to meet his burden on summary judgment. Therefore, judgment is granted to defendant on plaintiff's § 1981 claim to the extent it is based upon the alleged discriminatory failure to promote plaintiff to the June 1999 position. Defendant's motion is granted on this basis.

#### C. Remaining Disparate Treatment Claims Abandoned

The remaining allegations upon which plaintiff's § 1981 claim is based include the allegations that defendant: (1) unfairly assigned plaintiff supervisory responsibilities for the ACCESS support area without a commensurate supervisory title during his manager's maternity leave in early 1999; (2) unfairly assigned plaintiff Y2k-related responsibilities without sufficient support in 1999; (3) shunned and ignored plaintiff through upper management who would not initiate conversation with him; and (4) denied plaintiff training in other products. In its motion, defendant contends that plaintiff is unable to meet the relevant prima facie elements of his claim, and further, that he is unable to establish that

**1164**

defendant's proffered nondiscriminatory reason for its actions is pretextual.

Plaintiff failed to respond to that portion of defendant's motion asserting that plaintiff is unable to maintain his § 1981 claim where it is premised upon these remaining disparate treatment allegations. This court has deemed claims abandoned where a plaintiff, proceeding pro se, failed to address challenged claims in responding to a summary judgment motion. *Wesley v. Don Stein Buick, Inc.*, 42 F.Supp.2d 1192, 1195 n. 2 (D.Kan.1999) (finding claims abandoned where pro se plaintiff failed to address claims in papers responding to summary judgment motion). Here, where plaintiff is represented by counsel, the court finds it appropriate to dismiss plaintiff's claims where he (through counsel) has chosen not to oppose the arguments for judgment set forth by defendants. Accordingly, the court finds plaintiff has abandoned these remaining four bases for his § 1981 claim. Judgment is granted to defendant on plaintiff's § 1981 claim to the extent it relies on these four bases for relief. Defendant's motion is granted on this basis.

**IV. Order**

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 41) is granted. In addition, as there are no remaining bases upon which plaintiff's § 1981 claim is premised, plaintiff's complaint is dismissed in its entirety.